213 So.2d 422 (1968)
THE FLORIDA BAR, Complainant,
v.
Caspar HEFTY, Jr., Respondent.
No. 37081.
Supreme Court of Florida.
July 2, 1968.
Rehearing Denied September 13, 1968.
*423 Richard E. Hodges, Miami, for The Florida Bar, complainant.
Phillip Hubbart, Miami, for respondent.
THOMAS, Justice:
Before preparing an opinion in this case which will require a minute examination of the record of the respondent, it seems appropriate to copy the oath that each attorney takes when he embarks upon his career as a member of The Florida Bar.
"I do solemnly swear:
"I will support the Constitution of the United States and the Constitution of the State of Florida.
"I will maintain the respect due to Courts of Justice and judicial officers.
"I will not counsel or maintain any suit or proceeding which shall appear to me to be unjust, nor any defense except such as I believe to be honestly debatable under the law of the land.
"I will employ for the purpose of maintaining the causes confided to me such means only as are consistent with truth and honor, and will never seek to mislead the Judge or Jury by any artifice or false statement of fact or law.
"I will maintain the confidence and reserve inviolate the secrets of my client, and will accept no compensation in connection with his business except from him or with his knowledge and approval.
"I will abstain from all offensive personality and advance no fact prejudicial to the honor or reputation of a party or witness, unless required by the justice of the cause with which I am charged.
"I will never reject, from any consideration personal to myself, the cause of the defenseless or oppressed, or delay any man's cause for lucre or malice. So Help Me God."
We have italicized the part of the oath which has been drawn into focus by the conduct of the respondent reflected in this record.
It should be remembered that among the activities of members of The Florida Bar is a social feature so that on many occasions the members of the Bar and their wives and children mingle in various social affairs especially during conventions.
The record of the respondent in this case is sordid indeed and, as indicated, it reflects a personality that is offensive in the extreme. It certainly does not comport with the part of the oath he took which we have italicized.
The victim of his evil desires was his step-daughter, a member of his own household. In his orgy he was not satisfied just to violate her body but was at pains to have photographs taken of him and her in sexual embrace, normal and abnormal. In the beginning the girl was slightly more than ten years of age and he was still pursuing his disgusting campaign with her when she reached the age of 17 years. It was then that she complained to the authorities of the treatment she was receiving from the respondent and she was first placed in a foster home and then in a home for unwed mothers, she having meanwhile become pregnant. During the course of an investigation of the facts, an order was entered by the Judge of the Juvenile and Domestic Relations Court of Dade County, Florida, prohibiting the respondent from visiting or communicating with the minor girl. The respondent, however, disregarded this order and proceeded to visit her and communicate with her. It was during this investigation that the respondent obtained a divorce from the girl's mother, his wife, and married the girl *424 with, however, her mother's consent. The girl had a child about four months after she and the respondent were married and these persons, the respondent, his wife, and former wife and children by both wives were all living together. These observations are taken from the findings of the referee which are abundantly sustained by the evidence in the case.
The referee recommended that the respondent be disbarred after finding him guilty of violating Article XI, Rule 11.02(3) (a) of the Integration Rule of The Florida Bar, 32 F.S.A., dealing with standards of professional conduct, and the Board of Governors approved his recommendation. After familiarizing ourselves with the record, we are convinced that the respondent well deserves this judgment and so we affirm it. It should be observed that this is not his first experience with disciplinary proceedings. On another occasion he was suspended from The Florida Bar for a period of six months for unprofessional conduct.
A powerful argument has been made in his behalf by his counsel and it is not without logic, namely, that a man's personal life should not gauge his abilities as an attorney and that his personal life should be his own, free from inroads upon it by those charged with policing the Bar, but we do not think the conduct of this man is such that he should be allowed to mix with the honorable members of the profession and their families on the theory that vile as his demeanor has been, he still should be afforded the protection of the Bar in the pursuit of the profession on which he has brought dishonor.
Section 20 of Article IV of Rules Relating to Admission to The Florida Bar, 32 F.S.A. provides that "No person shall be admitted to the bar examination unless he first produces satisfactory evidence to the Board that he is of good moral character * * *." Therefore it is very doubtful that had the Board of Bar Examiners been aware of the character of the respondent as revealed by his subsequent conduct he would have been allowed entrance to the Bar in the first place. This decision is not to be stretched so that any peccadillos of a member of the Bar may result in disciplining the member, but is reached because of the enormity of the depravity of the man with whom we are dealing.
Having concluded that the action of the Board of Governors should be affirmed, we do now adopt their judgment, and it is, therefore, adjudged by this Court that the respondent be disbarred from further practice of law in this State.
CALDWELL, C.J., and DREW, THORNSAL and ADAMS, JJ., concur.
ROBERTS, J., agrees to judgment.
ERVIN, J., dissents with Opinion.
ERVIN, J. (dissenting):
It is true that Respondent's conduct as described in the majority opinion is reprehensible in terms of social, moral and conventional standards. Such conduct is an affront to the sensitivity of decent, civilized citizens. Nevertheless, I do not believe such conduct is a proper subject for disciplinary action by the Florida Bar. I doubt the Bar has any jurisdiction or power under the constitutions, laws and regulations of the state and the nation to deprive a citizen of his professional status, viz., has right to practice law and make a living, by reason of such conduct, and especially so when he has not been convicted of any criminal charge involving such conduct. It does not appear to me that Respondent's described conduct in the private area of his life has such direct relation to his professional status as an attorney to warrant intervention of the Bar. Nor do I believe such reprehensible conduct has so attainted him that he can be judicially declared to be "beyond the pale," a pariah, *425 unfit to mix socially with other members of the bar.
In 7 Am.Jur.2d Attorneys at Law § 45, at page 73, the text reads.
"Personal habits of an attorney, deemed below accepted social standards, have been the subject of a disciplinary proceeding in only a few cases. Sexual immorality,[5] bad language or bad manners have been held insufficient as a ground for suspension or disbarment."
* * * * * *
"[5.] People ex rel. Black v. Smith, 290 Ill. 241, 124 NE 807, 9 ALR 183.
Annotation: 9 ALR 202, s. 43 ALR 111, 55 ALR 1375."
I will not prolong this dissent further except to note a strong contention was made here by Respondent that the inquiry directed by the Bar concerning his described conduct contravened the hearsay rule and unduly invaded his right of privacy.