No. 59,963
Bar Docket No. 08334

In the Matter of HAROLD V. MATNEY, JR., *Respondent.*

(740 P.2d 598)

784

Opinion filed July 17, 1987.

*Donald R. Hoffman,* of Topeka, argued the cause and was on the brief for respondent. Respondent *Harold V. Matney, Jr.,* also argued pro se.

*Stanton A. Hazlett,* disciplinary counsel, argued the cause, and *Bruce E. Miller,* disciplinary administrator, was with him on the brief for petitioner.

*Per Curiam:* Two complaints filed by the office of the disciplinary administrator against Harold V. Matney, Jr., of Ottawa, an attorney admitted to the practice of law in Kansas, have been consolidated for purposes of these original proceedings in discipline.

The two complaints, although filed at different times, were interrelated and therefore were heard by a panel of the Kansas Board for Discipline of Attorneys on the same date. Complaint 2671 was filed May 2, 1984, and will be referred to as the cemetery complaint. Complaint 2914 was filed September 12, 1985, and will be referred to as the Rickey trust complaint. As respondent's brief asserts the same issues as to both complaints, we will summarize each complaint and the panel findings before turning to the issues raised by respondent.

### Complaint #2671—The Cemetery Complaint

The events which led to the cemetery complaint began in 1977 when respondent purchased six cemetery corporations. After the purchase, respondent was the sole shareholder and served as president and treasurer of each of the six cemetery corporations. Each cemetery corporation was required by K.S.A. 1986 Supp. 17-1311 to maintain a permanent maintenance fund in a trust company, bank, or savings and loan association as specified in the statute. The fund is created by a statutorily required 15% deposit into the fund every time a cemetery sells a lot. The principal of the fund may not be used except for statutorily allowed investments. The income produced by the fund is to be used only to maintain the cemetery. Prior to respondent's purchase of the cemetery corporations, the six funds were managed by the trust departments of two banks. Following his acquisition

of the cemetery corporations, the respondent assumed control of the six permanent maintenance funds, which contained in excess of $200,000. By December 19, 1978, respondent had transferred $210,541.53 of the permanent maintenance funds to himself in his capacity as the new trustee of the funds. An investigation of bank documents proved the respondent had converted most, if not all, of the permanent maintenance funds to his personal use.

In November of 1980, the attorney general of Kansas commenced litigation against the respondent. The attorney general alleged that the respondent liquidated the permanent maintenance funds in the six cemetery corporations that respondent controlled. The case was eventually settled when the respondent deposited $206,000 in trust with the Indian Springs Bank at Kansas City. Respondent borrowed the $206,000 in his individual capacity from the Indian Springs Bank.

In the course of the litigation commenced by the attorney general, the respondent answered interrogatories and was deposed. In the interrogatories respondent certified therein to the truth of his answers. Respondent gave his answers to deposition questions under oath.

In his depositions and answers to interrogatories, the respondent represented that $186,000 of the permanent maintenance funds was invested in two real estate ventures. One involved a residence in Kansas City, Kansas, allegedly purchased from Helen B. Rickey for $80,000. The second was several parcels of land in Wyandotte County which the respondent represented was an investment of $100,000 in property owned by his uncle, John J. Shockey. An additional $6,000 was represented to be invested in improvements in the properties.

After obtaining ownership of the cemetery corporations, respondent had the obligation, pursuant to K.S.A. 17-1312a(a), to file annual reports with the Kansas Secretary of State. Respondent failed to do so in 1978 and 1979. The 1980 report was filed only after demand was made by the secretary of state. In the annual reports filed for 1980 and 1981, respondent certified that the permanent maintenance funds held valid real estate mortgages totaling $186,000. Apparently these mortgages referred to the Rickey and Shockey properties.

As a justification for his diversion of the permanent mainte-

nance funds, the respondent contended at the hearing before the panel that he had expended his own personal funds for the payment of cemetery expenses in an amount of some $325,000.00. However, K.S.A. 1986 Supp. 17-1311 provides that only the income from the funds may be expended for maintenance. No satisfactory proof of such expenditures appears in the record and no assertion of any such expenditures was made in the litigation filed by the attorney general. There was no evidence presented at any time of any payment of $80,000 to Helen B. Rickey or to her trust, and no evidence showing the cemetery maintenance funds owned any real property or any real property mortgages.

After making detailed findings of fact, the panel of the Board for Discipline of Attorneys concluded:

"1. That respondent violated DR 1-102(A)(4) by engaging in conduct involving dishonesty, fraud, deceit and misrepresentations on four occasions:

a) By answers to interrogatories nine and ten to Complaint #4 (2671) wherein respondent represented under oath that a portion of the Cemetery Permanent Maintenance Funds turned over to respondent, as trustee, and withdrawn by him from the trust accounts, had been used to purchase the Helen B. Rickey real estate.

b) By deposition answers, under oath, as outlined in finding of fact Number 17, above, wherein respondent repeatedly represented that $80,000 belonging to the six Cemetery Permanent Maintenance Trust Funds had been withdrawn by respondent to purchase the Helen B. Rickey real estate for the benefit of the cemetery trust funds.

c) By his testimony, under oath, before this panel when respondent claimed:

as to 1(b), above, that what he meant by his answers to interrogatories and deposition questions as outlined in findings of fact Numbers 16 and 17, above, was that he had some future obligation to pay $80,000 for the Helen B. Rickey real estate because respondent construed some unnamed Kansas law to mean that he had abandoned some cemetery assets.

d) By filing annual reports with the Kansas Secretary of State, as set out in number 21, above, which respondent knew or should have known were false.

2. That respondent violated DR 1-102(a)(3) and (6) by converting money belonging to the permanent maintenance trust funds belonging to the six cemetery corporations to respondent's personal use."

## Complaint #2914—The Rickey Trust Complaint

Complaint #2914 filed against the respondent involved the Rickey trust referred to earlier. The respondent was an acquaintance of a Kenneth Rickey. Mr. Rickey's mother, Helen B.

Rickey, was an elderly woman afflicted with Alzheimer's disease. Respondent and Mr. Rickey discussed Mrs. Rickey's legal situation in 1980. The respondent suggested that a trust was a viable way to preserve Mrs. Rickey's assets. After these discussions, a trust agreement and will were prepared by the respondent. Kenneth Rickey was the sole heir-at-law of his mother and the sole devisee and legatee named in the will. Under the trust agreement, Helen B. Rickey placed her real estate, consisting of her homestead, and cash assets into the trust. The respondent was named trustee of the trust and, therefore, Mrs. Rickey's real estate was deeded to him as trustee. The real estate deeded to respondent is the same real property in which respondent claimed he invested $80,000 of the cemetery permanent maintenance funds. Mrs. Rickey made provisions for the early termination of a certificate of deposit she held so that approximately $40,000 in cash assets could be transferred to the respondent as her trustee. As a result of the early termination of the certificate of deposit, respondent received $39,482.97 in funds. This transfer of funds occurred around October 29, 1980. Bank records obtained during the investigation showed the following disposition of the $39,482.97:

1) $25,000 deposited into Harold Matney savings account on October 29, 1980;
2) $14,382.97 deposited in Harold Matney trust account on October 29, 1980;
3) $100 cash to respondent on October 29, 1980.

Prior to the withdrawal of the Rickey funds from the certificate of deposit, they had been earning 10.484%. Ken Rickey testified that respondent told him and his mother that the respondent could invest the Rickey funds in a "Jumbo CD" which would provide a rate of return two points over current money market rates and at least 2% better than the certificate of deposit rate. No evidence was presented at the disciplinary hearing indicating respondent ever deposited the Rickey funds anywhere except in respondent's own accounts.

During depositions in the cemetery permanent maintenance fund litigation, respondent testified the Rickey house was rented for $350 or $450 a month. It was never rented, as Mrs. Rickey and/or her son continued to live there.

Following the death of Mrs. Rickey, Kenneth Rickey retained other counsel and, after repeated demands, the respondent returned $38,667.64 to Kenneth Rickey and reconveyed the Kansas City, Kansas, real estate to Mr. Rickey; the Rickey trust was terminated. In return, Mr. Rickey released respondent from his duties as trustee and agreed not to file suit for damages against respondent individually or in his capacity as trustee.

Again the hearing panel made detailed findings of fact, found numerous violations of the Code of Professional Responsibility, and concluded:

"1. That respondent violated DR 1-102(A)(4) by engaging in conduct involving dishonesty, fraud, deceit and misrepresentations on three occasions:

a) By answers to interrogatories nine and ten to Complaint #4 (2671) wherein respondent attempted under oath to represent that a portion of the Cemetery Permanent Maintenance Funds turned over to respondent, as trustee, and withdrawn by him from the trust accounts, had been used to purchase the Helen B. Rickey real estate.

b) By deposition answers, under oath, as outlined in finding of fact Number 21, above, wherein respondent repeatedly represented that $80,000 belonging to the six Cemetery Permanent Maintenance Trust Funds had been withdrawn by respondent to purchase the Helen B. Rickey real estate for the benefit of the cemetery trust funds.

c) By deposition answers, under oath, as outlined in finding of fact Number 24, above, wherein respondent twice testified he had rented the Helen B. Rickey house, as trustee of the six Cemetery Permanent Maintenance Funds, for a monthly rent of $350.00 triple net and later for a rental of either $350.00 or $450.00 per month in order to establish, falsely, that the cemetery trust funds were receiving income from the $80,000 investment.

d) By his testimony, under oath, before this panel when respondent claimed:

(i) As to 1(c), above, that Kenneth Rickey was paying monthly rental to respondent as trustee by caring for his mother; and

(ii) as to 1(b), above, that what he meant by his answers to interrogatories and deposition questions as outlined in findings of fact Numbers 20 and 21, above, was that he had some future obligation to pay $80,000 for the Helen B. Rickey real estate because respondent construed some unnamed Kansas law to mean that he had abandoned some cemetery assets.

2. That respondent violated DR 6-101(A)(2) by handling a legal matter without preparation adequate in the circumstances, to-wit: incompetently preparing the Helen B. Rickey Trust as outlined in finding of fact Number 7, above.

3. That respondent violated DR 1-102(A)(3) and (6) by converting money belonging to the Helen B. Rickey Trust to respondent's personal use as set forth in finding of fact 15, above."

The panel recommended indefinite suspension in each report. Respondent filed exceptions to both panel reports, briefs were filed, and the issues argued before this court, all as provided by Supreme Court Rules. We now turn to the issues raised by the respondent.

The respondent first asserts that the hearing panel violated his right to due process of law by finding him guilty of violations which were not charged in the complaint against him.

In the Rickey trust complaint, the hearing panel found that the Helen B. Rickey trust agreement, prepared by respondent, was legally insufficient in the following aspects: No income beneficiary or remainderman was named; the trust terminated either 21 years after the date of death of Kenneth Rickey, or 15 years after the death of Helen B. Rickey; the heart of the trust agreement was a photocopy of an irrevocable life insurance trust; and there was no life insurance on the life of Helen B. Rickey. The hearing panel also found that had the trust agreement been properly drafted there would have been no need for a will or for the probate thereof. The hearing panel stated in its conclusions of law that the "respondent violated DR 6-101(A)(2) by handling a legal matter without preparation adequate in the circumstances, to-wit: incompetently preparing the Helen B. Rickey Trust."

The respondent argues that the complaint does not allege the trust document was drafted incompetently nor does it contain allegations concerning the probating of the Rickey will. Respondent argues that a reading of the complaint indicates that the conduct with which the respondent is charged is conversion of funds and deliberate misstatement of facts under oath. He complains that he had no opportunity to offer any defense concerning the contents of the trust document or the necessity of probate proceedings.

Supreme Court Rule 211(b) (235 Kan. cxxviii) requires the formal complaint in a disciplinary proceeding to be sufficiently clear and specific to inform the respondent of the alleged misconduct. The case of *State v. Caenen*, 235 Kan. 451, 681 P.2d 639 (1984), discusses the applicability of the due process clause to a disciplinary proceeding since the decision of *In re Ruffalo*, 390 U.S. 544, 20 L. Ed. 2d 117, 88 S. Ct. 1222, *reh. denied* 391 U.S.

961 (1968), which held that a lawyer charged with misconduct in lawyer disciplinary proceedings is entitled to procedural due process, and that due process includes notice of the nature of the charges sufficient to inform and provide a meaningful opportunity for explanation and defense. In cases subsequent to the *Ruffalo* decision, this court has ruled that it is not necessary for the board to notify the respondent of specific acts of misconduct as long as the complaint sets out the basic factual situation from which the charges might result, thereby putting the respondent on notice as to what ethical violations may arise therefrom. See 235 Kan. at 459 and cases cited therein.

Here, the allegations in the Rickey trust complaint pertain to the way the respondent handled the Helen B. Rickey trust property. The complaint also states the respondent prepared the trust agreement and the will. While a liberal interpretation of the complaint would indicate that it does impart sufficient notice that the document itself could be examined for any ethical misconduct on the part of the respondent, we conclude the respondent's arguments have some merit. Therefore, we will ignore the panel's findings which pertain to respondent's inadequacy in preparing the Helen B. Rickey trust agreement and its conclusion number two wherein the panel finds the respondent violated DR 6-101(A)(2) (235 Kan. cxlvii).

Second, respondent complains that, in both reports of the hearing panel, the panel found the respondent violated DR 1-102(A)(4) (235 Kan. cxxxvii) based upon his testimony before the panel. Respondent does not dispute the panel's authority to disbelieve his testimony, but he does dispute the panel's authority to make a finding of ethical violation based on that testimony. We have previously set forth the panel's conclusions as to each complaint.

The allegations in the formal complaints are extensive and the panel's findings of misconduct, as stated above, are tied into those allegations. While it is obvious that the complaints do not, and could not, allege the factual situation of the respondent testifying falsely before the hearing panel, we are of the opinion that when the evidence is clear and convincing that a respondent in a disciplinary proceeding has not been truthful, the panel may consider such fact and find the respondent has violated the Code

of Professional Responsibility by such testimony during the proceeding. Due process of law does not give a respondent in a disciplinary proceeding the right to testify falsely or to make misrepresentations during the proceedings, and a finding of ethical violation, based upon such evidence, does not violate the respondent's rights to due process of law. Here, the evidence is overwhelming that respondent knowingly misrepresented matters to the panel. The panel was justified in so finding. We find no merit in this argument of the respondent.

The next issue the respondent raises is that the disciplinary administrator's delay in filing formal complaints and in bringing them to hearing prejudiced the respondent's ability to defend himself in violation of his rights to due process of law and in violation of this court's rules pertaining to the discipline of attorneys.

The Helen B. Rickey trust agreement was executed in 1980. It was not until after the death of Mrs. Rickey on January 19, 1982, and the retention of new counsel by Kenneth Rickey, that respondent's handling of the trust came into question. The initial complaint filed with the disciplinary administrator was received from Mrs. Rickey's new counsel on March 8, 1983. An initial investigation was then undertaken prior to submission to the review committee. Supreme Court Rule 210(b) (235 Kan. cxxviii). The matter was submitted to the review committee in February 1984. A formal complaint by the disciplinary administrator was filed on May 2, 1984, and the hearing held January 27, 1986.

Respondent purchased the six cemetery corporations in 1977. The attorney general commenced litigation against the respondent in November 1980. The initial complaint to the disciplinary administrator was filed by two members of the attorney general's staff in June 1982 and was submitted to a review committee on June 21, 1984. A formal complaint against the respondent was filed September 12, 1985, and the hearing held January 27, 1986.

Supreme Court Rule 210 requires all investigations to be conducted by or under the supervision of the disciplinary administrator. Rule 210(c) requires the disciplinary administrator to make recommendations to the review committee upon the conclusion of a preliminary investigation. Respondent argues the

rules were violated because final investigation was not commenced until *after* the finding of probable cause by the review committee.

The rules do not require an investigation to be performed by a certain time period nor do they require that the entire investigation be completed prior to submission to the review committee. It is the intent of the rules that when a complaint is received by the disciplinary administrator that a preliminary investigation be conducted before submission of the complaint to the review committee, which then determines if there is probable cause to believe an ethical violation has occurred. It is only after such a finding that a full investigation is undertaken in preparation for an adversary proceeding before a hearing panel. With cooperation from a respondent, many complaints are disposed of prior to or at the review committee stage as being without merit. While it would be ideal if investigations could be short in length, such is not always the case. Additionally, the respondent added to the delay of the investigations herein by not cooperating, as will be discussed later.

This court has recognized in previous disciplinary cases that although no statute of limitations is applicable to disciplinary actions, charges may become so stale that it would become inequitable to act upon them. *In re Ratner*, 194 Kan. 362, 373, 399 P.2d 865 (1965), *In re Elliott*, 73 Kan. 151, Syl. ¶ 3, 84 Pac. 750 (1906). While in some instances a delay in the proceedings or the commencement thereof may require the dismissal of disciplinary actions, there must be a showing of prejudice to the party asserting such delay as a defense. The primary purpose of professional disciplinary proceedings is to protect the public and that purpose would not be met by dismissing, due to delay, a case against an attorney whose conduct disqualified him from practicing law. See Annot., 93 A.L.R.3d 1057.

The disciplinary administrator's office called upon private attorneys to investigate and trace the financial transactions which occurred regarding the money from the permanent maintenance funds and the Rickey trust. Supreme Court Rule 210(b). Numerous requests were made by the attorney investigators for the respondent to produce documents. The respondent failed to cooperate and the disciplinary administrator's office eventually

was forced to hire a professional investigator to obtain the necessary information and documents. By that time, two banks where respondent had accounts had closed. Additionally, the investigator examined bank documents from seven different banks, which was extremely time-consuming. While the respondent asserts that three witnesses have died (his secretary who dealt with the cemetery companies, the attorney for the secretary of state who conducted an investigation of the cemetery reports, and the president of a bank who dealt with the respondent on these matters), he has made no showing of how their lost testimony has prejudiced his case. If respondent had cooperated in the initial investigations, the desired evidence and testimony, if any, might have been available to respondent. The delays herein were caused primarily by respondent's own actions. The respondent's assertion that delay in the proceedings violated his due process rights lacks merit.

Finally, the respondent asserts the findings and recommendations of the panel are not supported by the evidence. Respondent asserts the evidence presented by the professional investigator, James Miller, a former F.B.I. agent with years of experience in investigating white collar crime, does not reach the clear and convincing standard required by Supreme Court Rule 211(f).

This Court has addressed the issue of the weight to be given a panel report and has likened the functions of a hearing panel and its findings of fact to that of a trial court.

"The role of the Board is similar to that of a commissioner appointed by this court to conduct hearings and to make a report of his findings, conclusions, and recommendations. Although such a report is advisory only, it will be given the same dignity as a special verdict by a jury, or the findings of a trial court, and will be adopted where amply sustained by the evidence, or where it is not against the clear weight of the evidence, or where the evidence consisted of sharply conflicting testimony." *State v. Zeigler*, 217 Kan. 748, 755, 538 P.2d 643 (1975).

The record in this case consists of at least 57 exhibits submitted by the disciplinary administrator, 21 exhibits submitted by the respondent and a transcript of 925 pages of testimony. Many of the exhibits are financial records and consist of multiple pages. The hearing before the panel took four days. The panel set forth extensive and detailed findings of fact based on the evidence presented at the hearing. We have carefully reviewed

the extensive record in this case and conclude the panel's factual findings and its conclusions of law are supported by clear and convincing evidence with the exception of the violation of DR 6-101(A)(2).

A majority of the members of this court concur in the recommendations of the panel that respondent be indefinitely suspended, while a minority would disbar the respondent.

IT IS THEREFORE BY THE COURT ORDERED that Harold V. Matney, Jr., be and he is hereby indefinitely suspended from the practice of law in the State of Kansas.

IT IS FURTHER ORDERED that this order shall be published in the official Kansas Reports and that the costs herein be assessed to the respondent.

Effective this 17th day of July, 1987.