No. 68,626

In the Matter of RICHARD E. KEITHLEY, *Respondent.*

(850 P.2d 227)

Opinion filed April 16, 1993.

*Bruce E. Miller,* disciplinary administrator, argued the cause and was on the brief for petitioner.

*Michael A. Barbara,* of Topeka, argued the cause for respondent. *Richard E. Keithley,* respondent, was on the brief and appeared pro se.

*Per Curiam:* This is an original attorney discipline proceeding involving Richard E. Keithley that originated in 1985.

In January 1985, Keithley was charged with one count of aggravated incest with his stepdaughter, contrary to K.S.A. 1984 Supp. 21-3603. At trial, Keithley stipulated "to having engaged in several separate and distinct acts of sexual intercourse and sodomy" with his stepdaughter, A.R. On July 12, 1985, he was found guilty as charged. Keithley received a sentence of two to five years. He served three years.

The Kansas Court of Appeals affirmed Keithley's conviction in an unpublished opinion (No. 58,696, filed February 5, 1987), and this court denied his petition for review. (241 Kan. 840 [1987]).

Following the trial court conviction, this court ordered Keithley to appear and show cause why he should not be disbarred from the practice of law in the State of Kansas. This court then indefinitely suspended Keithley from the practice of law in the State of Kansas pending the final determination of his appeal and the further order of this court. *In re Keithley,* 238 Kan. 245, 708 P.2d 984 (1985).

In 1990, Keithley requested that this court modify its previous order and allow him to practice law. On November 21, 1990, by order of this court, Keithley was placed on temporary suspension until the pending disciplinary complaint against him was resolved.

On March 22, 1991, the Disciplinary Administrator filed a formal complaint against Keithley. The Disciplinary Administrator alleged Keithley violated DR 1-102(A)(3), (4), (5), and (6) (1992 Kan. Ct. R. Annot. 189). DR 1-102(A), as set forth in Canon 1

of the Code of Professional Responsibility, provides, in pertinent part:

"A lawyer shall not: . . .
(3) Engage in illegal conduct involving moral turpitude.
(4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.
(5) Engage in conduct that is prejudicial to the administration of justice.
(6) Engage in any other conduct that adversely reflects on his fitness to practice law."

See Supreme Court Rule 226 (1992 Kan. Ct. R. Annot. 238) (Code of Professional Responsibility governs alleged ethical violations committed before March 1, 1988).

In pertinent part, the hearing panel set forth the following factual basis for its decision:

"Testifying on his own behalf, the Respondent acknowledged that this entire period in his life was very difficult. . . . During this period of time, [A.R.] was encountering a phase which [Respondent] described as an Electra Complex wherein [A.R.] felt that she would be a better wife for the Respondent than her mother. As a result, he admitted that they became close to the extent they were sexually involved. . . .

"The investigation report concerning [A.R.] is extremely detailed. It reveals a somewhat extended history of sexual conduct involving [A.R.]. . . . In addition, [A.R.] became pregnant and it appears from the investigation report that the Respondent was in fact the father.

"The Respondent testified concerning his sincere feelings toward [A.R.] during the period in question. Apparently, it was his feeling that attempts could be made to establish a common law marriage with [A.R.]."

The panel concluded Keithley's conduct with regard to A.R. violated DR 1-102(A)(3), (5), and (6), noting the Disciplinary Administrator had withdrawn the alleged violation of DR 1-102(A)(4). The panel unanimously recommended disbarment.

Keithley filed exceptions, both factual and legal, to the hearing panel's report. Although he agrees the panel's statement of facts essentially reflects the evidence presented, he claims several factual statements are wrong or need clarification. The errors of which he complains are either typographical or not necessary to the resolution of this case. We concur with the panel's statement of facts and will set forth additional facts as needed.

The issue before this court is the appropriate discipline to be imposed upon Richard E. Keithley. In recommending disbarment, the hearing panel reasoned:

"While certain evidence was offered by the Respondent which would indicate that he has undergone rehabilitation; that he now recognizes the impropriety of his acts; and has otherwise expressed remorse, the inescapable conclusion is that his conduct during the period in question was simply unacceptable, by whatever standard of measurement one would choose to use. Even in the absence of a Code of Professional Responsibility, it would be inconceivable that anyone would suggest that the Respondent should retain the right to practice law. The ABA standards recognize that aggravation may be considered when imposing discipline. Standard 9.22(c), (d), and (h) would clearly apply and are supported by the evidence presented to this panel."

"It is well established that the panel's findings and recommendations are advisory only and are not binding on the court. [Citations omitted.]" *In re Smith*, 249 Kan. 227, 229, 814 P.2d 445 (1991).

"[A]lthough the report of the disciplinary board 'is advisory only, it will be given the same dignity as a special verdict by a jury, or the findings of a trial court, and will be adopted where amply sustained by the evidence, or where it is not against the clear weight of the evidence, or where the evidence consisted of sharply conflicting testimony.' [Citation omitted.]" *In re Carson*, 252 Kan. 399, 406, 845 P.2d 47 (1993).

This court has the responsibility "to examine the evidence and determine for itself the discipline to be imposed. [Citation omitted.]" *Smith*, 249 Kan. at 229. We may impose sanctions lesser or greater than those recommended. Supreme Court Rule 212(f) (1992 Kan. Ct. R. Annot. 169); see *In re Veith*, 252 Kan. 266, 272, 843 P.2d 729 (1992). In assessing discipline, aggravating and mitigating factors are to be considered. See *In re Kershner*, 250 Kan. 383, 391, 827 P.2d 1189 (1992); ABA Standards for Imposing Lawyer Sanctions (1991) (hereinafter Standards).

Keithley concedes his behavior violated DR 1-102(A)(3), (5), and (6). He argues that this court should not adopt the hearing panel's recommendation of disbarment because the panel misapplied aggravating factors, because the panel failed to give proper weight to mitigating factors, because the panel failed to consider cases he cited, and because the panel failed to take into account the length of time he has been suspended. Keithley's arguments will be addressed in the context of aggravating and mitigating factors.

Keithley contends that, in recommending disbarment, the hearing panel misapplied certain ABA Standards and ignored others. He claims the panel misapplied Standard 9.22, which sets forth aggravating factors to consider in assessing the degree of discipline to impose. According to Keithley, the panel's reliance upon Standards 9.22(c) and (d) was not appropriate because his behavior was "a one-time lapse of personality in a personal, rather than legal setting." Standard 9.22(c) refers to "a pattern of misconduct," and Standard 9.22(d) refers to "multiple offenses." Standards, p. 49.

The essence of Keithley's argument is that, because there was one victim, there was no pattern of misconduct nor were there multiple offenses. His argument is not persuasive. In a statement to the police, Keithley admitted having sexual intercourse with A.R. approximately 25 times and having oral copulation several times. A.R. told the police she and Keithley may have had sexual intercourse as many as 70 times. The sexual conduct commenced in 1983 when A.R. was 13 years of age. At age 15, she became pregnant by Keithley. Keithley stipulated the sexual conduct occurred from September 1983 until January 1985.

Keithley also disagrees with the panel's conclusion that he violated Standard 9.22(h), referring to the "vulnerability of the victim." See Standards, p. 49. He questions how a blanket classification of 15-year-old girls as vulnerable victims meshes with the fact that, under Kansas law, these girls have the capacity to enter into common-law marriages. Keithley argues that vulnerability cannot be based upon age alone, at least in this case, and that the panel had no evidence before it that A.R. was a vulnerable victim. According to Keithley, the evidence suggested otherwise in that A.R. disobeyed court orders and continuously attempted to contact him, even after being threatened with contempt of court and imprisonment in an adult facility. Additionally, he claims A.R. not only consented to the sexual activity, but did not want it to stop. He suggests the panel's conclusion was both speculative and chauvinistic.

The panel was not referring to all 15-year-old girls, but to one in particular, A.R. Moreover, A.R. was not 15 years old when the sexual activity began. Keithley stipulated to the fact the aggravated incest occurred between September 1983 and January

1985. A.R. turned 14 years old in December 1983. Thus, A.R. was 13 years of age when the first sexual contact occurred. Not only was Keithley more than 20 years older, he had established a familial relationship with A.R., having been her stepfather since 1977 when he married her mother. The comparison fails because an incestuous act with a stepchild is not comparable to the ability to enter into a common-law marriage.

Keithley's contention that A.R. was not a vulnerable victim is not persuasive. Furthermore, he fails to demonstrate an appreciation of the impact of his actions upon A.R. See *People v. Grenemyer*, 745 P.2d 1027, 1030 (Colo. 1987) (in disbarring attorney based upon two counts of sexual assault upon a child, court took into account attorney's "refusal to acknowledge the nature of his conduct or the vulnerability of, or the effect upon, the victim").

We agree with the hearing panel's assessment that Standards 9.22(c), (d), and (h) are aggravating factors.

Many of Keithley's complaints are premised upon the assumption that if the hearing panel did not cite a particular standard, the panel failed to consider it. Neither this court nor the hearing panel are required to cite and discuss every potentially applicable standard. Moreover, discussion of any standard is not required. The Standards are guidelines to assist courts in selecting appropriate and uniform discipline, depending upon the facts and the aggravating and mitigating factors of each case. See *In re Anderson*, 247 Kan. 208, 212, 795 P.2d 64 (1990), *cert. denied* ____ U.S. ____, 112 L. Ed. 2d 1069 (1991); Standards, pp. 6-7.

This court also will take into account mitigating factors. Keithley claims the hearing panel failed to give proper consideration to his mitigation evidence.

Keithley presents a detailed portrait of his background prior to and during his incestuous relationship with A.R. Suffice it to say that prior to his sexual relationship with A.R., he suffered numerous professional, financial, and personal setbacks as well as enduring character assassinations from his wife's ex-husband.

With regard to rehabilitation, Keithley points out eight years have passed since his incestuous relationship with A.R. He claims that he was a model prisoner during the three years he spent in prison and that since his release he has not received even a traffic

citation. Since being released from prison, he has made a new life for himself—complete with a new wife and a young son by that marriage. In May 1990, he began work as a paralegal, which has allowed him to keep abreast of the law. His employer has offered to hire Keithley as an attorney if Keithley is allowed to resume the practice of law. There is some evidence in the record Keithley has undergone and completed treatment for his mental, emotional, and sexual problems. He claims all of this demonstrates he has made progress "towards sanity, towards normalcy, towards being able to be a good, active, competent practitioner."

In support of his argument that, based upon the mitigating evidence, he should not be disbarred, Keithley directs this court's attention to cases he cited to the hearing panel. Most of these cases, which are from other jurisdictions, involve attorneys who were found guilty of sexual misconduct, but were not disbarred. These cases are distinguishable.

In *Disciplinary Counsel v. King,* 37 Ohio St. 3d 77, 523 N.E.2d 857 (1988), the attorney had been convicted of contributing to the delinquency of a child based upon his ongoing affair with a 15-year-old girl. The attorney was suspended from the practice of law for one year. See *Disciplinary Counsel v. King,* 46 Ohio St. 3d 604, 545 N.E.2d 898 (1989) (attorney reinstated).

In *In re Safran,* 18 Cal. 3d 134, 133 Cal. Rptr. 9, 554 P.2d 329 (1976), the attorney was convicted of two counts of annoying or molesting a child under 18. He had been convicted of indecent exposure prior to his admittance to the bar. Because the attorney was involved in an ongoing psychiatric treatment program, was candid and remorseful, and received the highest professional performance rating from his firm, the attorney was placed on probation under intensive supervision for three years. *King* and *Safran* can be distinguished factually in that neither case involved incest. There is a difference between incest, in which the offender stands in a parental role, and sexual misconduct with a minor who is not related to the offender.

In *Matter of Kimmel,* 322 N.W.2d 224 (Minn. 1982), the Minnesota Supreme Court discussed the merits of disbarring an attorney who had been convicted of two counts of sexual misconduct with members of the same sex, a 13 year old and a 20 year old. The court noted the attorney was undergoing treatment with "a

licensed psychologist specializing in criminal sexual offenders" and was making progress. 322 N.W.2d at 225. Also mentioned was the fact the attorney was successful, had an excellent reputation, had cooperated in his investigation, and was active in community service. The court stated:

"Quite simply, it is the respondent's contention that it is unnecessary to disbar him because it is highly unlikely that he will again engage in the conduct for which he is being disciplined. When read carefully, the justifications cited by the Director in support of his position that disbarment is the appropriate sanction are primarily directed to the nature of respondent's misconduct, as opposed to any danger he might present to the public. Respondent's sexual contacts were unrelated to the practice of law, and there is no indication that disbarment is required to adequately protect the public.

"Respondent argues that the earlier cases that dealt harshly with sexual offenders were decided during an era when medical and psychological understanding of sexual dysfunction was less developed. . . .

. . . .

". . . As respondent suggests, current literature seems to indicate that sexual dysfunction is analogous to chemical dependency in the sense that while inner propensities may be difficult to alter, outward behavior is subject to change. This court has traditionally been lenient with attorneys who can trace their misdeeds to the latter disease. Sexual dysfunction is now treatable in much the same manner as chemical dependency. Respondent has demonstrated that he is undergoing and cooperating with treatment and is, consequently, unlikely to be a danger to the public or the profession.

"While, obviously, we do not condone respondent's misconduct and regard it as serious, we believe the public and the profession will be best served by restricting respondent's practice to examiner of titles throughout the remainder of his probation, with the right to resume full practice at the conclusion of his probation." 322 N.W.2d at 226-27.

See *Matter of Kimmel*, 347 N.W.2d 52 (Minn. 1984) (attorney reinstated).

Keithley focuses upon the *Kimmel* court's statement that the recommendation of disbarment made by the Minnesota disciplinary authority was directed to the nature of the misconduct, not to any danger presented to the public. Keithley then relies upon *Matter of Oliver*, 493 N.E.2d 1237, 1242 (Ind. 1986), in which the Indiana Supreme Court stated:

"In deciding [whether an attorney's conduct reflects adversely on his fitness to practice law], this Court exercises its duty to assure the public that those who hold licenses to provide service can be trusted to do so in a responsible and competent way. We consider whether an attorney can be

trusted to keep his client's secrets, give effective legal advice, fulfill his obligation to the courts, and so on. The question is whether there is a nexus between [the attorney's] act of misconduct and his fitness to practice law."

In *Oliver*, the attorney was convicted of driving while under the influence.

*Kimmel* is not helpful on the instant facts because Keithley does not suggest or acknowledge he has a sexual dysfunction—he claims his sexual misconduct was the result of stress and emotional problems. Keithley refers to his behavior as a one-time lapse of character, an aberration. *Oliver* can be distinguished factually. Although the question raised in *Oliver* is pertinent, it is only one of several considerations.

Numerous cases have addressed sexual misconduct as a basis for disciplining an attorney. See Comment, *Disciplining Attorneys for Non-Professional Conduct Involving Alcohol and Sex*, 1975 Ariz. St. L.J. 411; Annot., 43 A.L.R.4th 1062. Attorneys have been disbarred on the basis of incestuous behavior. See, *e.g., The Florida Bar v. Hefty*, 213 So. 2d 422 (Fla. 1968); *Matter of X*, 120 N.J. 459, 577 A.2d 139 (1990).

In *Hefty*, an attorney sexually abused his stepdaughter. In addition to having sexual intercourse with her, he had photographs taken of them in sexual positions. The sexual abuse began when the stepdaughter was 10 years of age. At age 17, she reported him to authorities and then learned she was pregnant. During the course of the investigation, the attorney divorced his wife and, with his wife's consent, married the stepdaughter. The attorney, his ex-wife, his stepdaughter-wife, and children from both wives all lived together.

The referee recommended disbarment. It was noted the attorney previously had been suspended for six months for unprofessional conduct. The court rejected the attorney's argument "that a man's personal life should not gauge his abilities as an attorney and that his personal life should be his own, free from inroads upon it by those charged with policing the Bar." 213 So. 2d at 424. The court reasoned:

"[W]e do not think the conduct of this man is such that he should be allowed to mix with the honorable members of the profession and their families on the theory that vile as his demeanor has been, he still should

be afforded the protection of the Bar in the pursuit of the profession on which he has brought dishonor." 213 So. 2d at 424.

Based upon "the enormity of the [attorney's] depravity," the Florida Supreme Court disbarred the attorney. 213 So. 2d at 424.

In *Matter of X,* an attorney pled guilty to three counts of second-degree sexual assault involving his three teenage daughters. It was noted the attorney sexually abused his daughters over a period of eight years for his own sexual gratification because he "found his wife unattractive and prostitutes were too expensive." 120 N.J. at 461. Disbarment was recommended because the attorney's "behavior was so shameful, so immoral, so vile as to evidence an absolute lack of good moral character." 120 N.J. at 461.

The New Jersey Supreme Court determined the offense of second-degree sexual assault brought dishonor upon the profession. "A person who does not uphold that which he is obligated to uphold imperils not only himself, but also the honor and integrity of his profession. He undermines the public trust and confidence in his profession as a whole. [Citation omitted.]" 120 N.J. at 462. After considering mitigating and aggravating factors, the court disbarred the attorney, reasoning:

" '[The attorney's] atrocious acts justify his disbarment. . . . A less severe discipline would undermine the gravity of the ethics offenses, the seriousness of the crimes, and the confidence reposed by the public on members of the legal profession and judicial system.' " 120 N.J. at 464.

Attorneys also have been disbarred for sexual misconduct involving children to whom they are not related. See, *e.g., People v. Grenemyer,* 745 P.2d 1027; *In re Duggan,* 17 Cal. 3d 416, 130 Cal. Rptr. 715, 551 P.2d 19 (1976).

In *Grenemyer,* an attorney was convicted of two counts of sexual assault on a child. The Colorado Supreme Court took into account that the attorney had no prior disciplinary record and that the attorney failed to acknowledge the victim's vulnerability and the impact of the crime upon the victim. The court concluded the attorney's "actions were in total disregard of the fundamental elements of moral standards that the public has a right to expect of a lawyer" and that "a sanction less than disbarment 'would unduly depreciate the seriousness of the [attorney's] misconduct

in the eyes of both the public and the legal profession.' " 745 P.2d at 1030-31.

In *Duggan*, an attorney pled guilty to contributing to the delinquency of a minor. The California Supreme Court noted that, prior to committing this offense, the attorney "suffered a series of personal tragedies, became emotionally depressed and endured a marked deterioration in his physical and mental health," and "his psychotic depression developed into a manic depression." 17 Cal. 3d at 421. The court rejected the attorney's argument "that his misconduct was largely the product of his mental illness and for that reason protection of the public only requires that he be precluded from practicing law until his mental health has been restored." 17 Cal. 3d at 423. In disbarring the attorney, the court reasoned that the "reprehensible nature" of the crime warranted severe discipline and that the attorney's conduct was " 'unworthy of a member of the legal profession.' " 17 Cal. 3d at 424. The court also noted the attorney became involved with the victim during the course of the attorney's representation of a client.

The reasoning of the disbarment line of cases is more persuasive than those cases Keithley cites. Additionally, after considering all of the evidence, both mitigating and aggravating, this court is of the opinion the aggravating factors present in this case outweigh the mitigating factors. We adopt the hearing panel's conclusion that Keithley's "conduct during the period in question was simply unacceptable, by whatever standard of measurement one would choose to use." Keithley's conduct is not within acceptable limits, and the respondent is ordered disbarred.

Because he has been suspended from the practice of law for nearly eight years, Keithley claims it would be "an enormous burden" for him to be disbarred because he would have to wait an additional five years to apply for reinstatement. See Supreme Court Rule 219(e) (1992 Kan. Ct. R. Annot. 180).

"Delay does not justify the dismissal of a disciplinary case, because the overriding purpose of a disciplinary proceeding is the protection of the public. The disciplinary rules do not include any type of statute of limitations. While in some instances a delay in the proceedings may justify the dismissal of disciplinary actions, there must be a showing of prejudice to the party asserting such delay as a defense." *In re Carson*, 252 Kan. 399, Syl. 4.

See *In re Matney*, 241 Kan. 783, 792, 740 P.2d 598 (1987); Annot., 93 A.L.R.3d 1057.

Here, Keithley applied for reinstatement and this court ordered that the indefinite suspension order of November 19, 1985, be abated and that Keithley temporarily be suspended from the practice of law effective November 21, 1990. In the interest of fairness, the date of disbarment shall be from November 21, 1990, making Keithley eligible to apply for reinstatement pursuant to Rule 219(e) on November 21, 1995.

IT IS THEREFORE ORDERED that Richard E. Keithley be and he is hereby disbarred from the practice of law in the State of Kansas, and his license and privilege to practice law are hereby revoked, effective November 21, 1990.

IT IS FURTHER ORDERED that the Clerk of the Appellate Courts strike the name of Richard E. Keithley from the roll of attorneys licensed to practice law in the State of Kansas and that respondent forthwith shall comply with Rule 218 (1992 Kan. Ct. R. Annot. 176).

IT IS FURTHER ORDERED that the costs of this proceeding be assessed to the respondent and that this order be published in the official Kansas Reports.