The Honorable Ron Thornburgh Secretary of State 120 S.W. 10th Avenue Topeka, Kansas 66612
Dear Secretary of State Thornburgh:
You request our opinion regarding the authority of a cemetery corporation to withdraw funds from its permanent maintenance fund. Specifically, you ask whether a cemetery corporation may borrow funds from its permanent maintenance fund to finance a capital improvement project if the loan is secured through a mortgage on unimproved land owned by the cemetery corporation.
Mount Hope Cemetery Company is a non-profit cemetery corporation organized and existing as a cemetery for charitable purposes pursuant to its articles of incorporation which were filed on August 15, 1906.[1]
Under its trust documents, the Company is required to deposit 25% of the purchase price of burial lots into its permanent maintenance fund.[2]
The Company wishes to construct a mausoleum adjacent to its existing office and mausoleum. An audit report of the Company's permanent maintenance fund shows a balance in excess of $100,000.[3] The Company also has certain funds specifically set aside as a reserve for permanent improvements such as a mausoleum. The amount of funds in the reserve will not cover the costs of constructing the mausoleum.[4] The Company has requested that it be permitted to borrow funds from its permanent maintenance fund to cover the costs of construction, using as security for the loan a first mortgage on all unimproved land owned by the Company. The loan would not exceed 75% of the market value of the land. The interest rate on the loan would be a variable rate equal to the annual rate of return received by the trustee on the maintenance reserve fund. The loan would be repaid in annual installments of principal and interest amortized over 20 years.[5]
State statutes require certain cemetery corporations[6] maintain in designated types of financial institutions[7] a permanent maintenance fund the proceeds of which are to be used for maintenance of the cemetery.[8] The permanent maintenance fund is funded through deposits of "a percentage of the purchase price of each burial lot sold by [the cemetery corporation], or any payment thereon, not less than 15% thereof. . . ."[9] The principal of the fund may not be used except for statutorily allowed investments.[10] "The income of the permanentmaintenance fund shall be used exclusively for the maintenance of the cemetery."[11] Projects deemed by state statute to be maintenance "include, but [are] not . . . limited to, mowing, road maintenance and landscaping, but shall not include administrative costs, expense of audits or the portion of any capital expense for equipment used to maintain portions of a cemetery not sold for burial purposes or in use for grave sites."[12]
"Moneys in such fund may be held and invested to the same extent as is provided in K.S.A. 17-5004 [prudent investor rule], . . . but the total amount of money invested in any mortgage upon real property shall not exceed an amount equal to 75% of the market value of such property at the time of such investment."[13]
By statute, the trust agreement establishing the permanent maintenance fund must include a provision that no moneys, other than income from the trust, will be paid over to the cemetery corporation by the trustee, except upon the written permission of the Secretary of State.[14]
A cemetery corporation "organized . . . for the purpose of establishing and maintaining a cemetery . . . for charitable purposes and having . . . a permanent maintenance fund containing assets of at least $100,000 . . ."[15] is subject to the provisions of K.S.A. 17-1348 and 17-1349. K.S.A. 17-1348 allows for the joint custody of the assets comprising the permanent maintenance fund by the treasurer and governing body of the cemetery corporation and a bank. Investment standards applicable to such cemetery corporations are set forth in K.S.A. 17-1349.
"In acquiring, investing, reinvesting, exchanging, retaining, selling and managing property for the benefit of any cemetery corporation now or hereafter organized as provided in K.S.A. 17-1348, the governing board shall exercise such judgment and care under the circumstances then prevailing, which men of prudence, discretion and intelligence exercise in the management of their own affairs, not in regard to speculation but in regard to the permanent disposition of their funds, considering the probable income as well as the probable safety of its capital.
"Within the limitations of the foregoing, the governing board of the cemetery corporation is authorized to acquire and retain every kind of property, real, personal or mixed, and every kind of investment, specifically but not by way of limitation, bonds, debentures and other corporate obligations, or loans secured by real estate mortgages, and stocks, preferred or common, which men of prudence, discretion and intelligence acquire or retain for their own account, and within the limitations of the foregoing, the governing board of the cemetery corporation may retain property properly acquired, without limitation as to time and without regard to its suitability for original purchase:Provided, That it may be permissible for such governing body of such acemetery to invest its funds for perpetual care or permanent maintenancein the erection of a mausoleum upon its grounds or for the partialexpense for the erection thereof."[16]
The fundamental rule of statutory construction is that the intent of the Legislature governs, where it can be ascertained.[17] The statutes must be construed so as to give effect to the intent of the Legislature as expressed rather than determine what the law should or should not be.[18] In construing the statute, consideration must be given to the provisions of statutes in pari materia with a view of reconciling and bringing them into workable harmony, if reasonably possible to do so.[19]
While K.S.A. 17-1311 is remedial and should be construed liberally to ensure privately developed cemeteries do not become public charges,[20]
the language in K.S.A. 17-1349 must be given effect. Therefore, the governing body of a cemetery corporation organized for the purpose of establishing and maintaining a cemetery for charitable purposes and having a permanent maintenance fund containing assets of at least $100,000 may invest its funds for permanent maintenance in the construction of a mausoleum upon grounds of the cemetery corporation or for the partial expense for the construction thereof. In accordance with K.S.A. 17-1311, the total amount of money invested in any mortgage upon real property must not exceed an amount equal to 75% of the market value of the real property at the time the investment is made.
Very truly yours,
 CARLA J. STOVALL Attorney General of Kansas
 Richard D. Smith Assistant Attorney General
CJS:JLM:RDS:jm
[1] Gerald L. Goodell, Correspondence, March 17, 2000.
[2] Gerald L. Goodell, Correspondence, February 21, 2000.
[3] Gerald L. Goodell, Correspondence, March 17, 2000.
[4] Gerald L. Goodell, Correspondence, February 21, 2000.
[5] Gerald L. Goodell, Correspondence, March 17, 2000.
[6] See K.S.A. 17-1307; 17-1312f.
[7] K.S.A. 17-1311; 17-1312.
[8] K.S.A. 17-1308; 17-1311.
[9] K.S.A. 17-1311.
[10] In the Matter of Matney, 241 Kan. 783, 784 (1987).
[11] Id. (emphasis added).
[12] Id. See also Attorney General Opinion No. 82-253.
[13] K.S.A. 17-1311.
[14] K.S.A. 17-1312.
[15] K.S.A. 17-1348.
[16] K.S.A. 17-1349 (emphasis added).
[17] Danisco Ingredients U.S.A., Inc. v. Kansas City Power LightCo., 267 Kan. 760, 772 (1999).
[18] Gonzales v. Associates Financial Service Co. of Kansas, Inc.,266 Kan. 141, 150 (1998).
[19] Citizens' Utility Ratepayer Board v. State Corporation Comm'n,264 Kan. 363, 389 (1998).
[20] State ex rel., Londerholm v. Anderson, 195 Kan. 649, 652 (1966).