No. 101,116

In the Matter of FREDERICK B. CAMPBELL, *Respondent*.

(199 P.3d 776)

Opinion filed January 16, 2009.

*Alexander M. Walczak*, deputy disciplinary administrator, argued the cause, and *Stanton A. Hazlett*, disciplinary administrator, was with him on the formal complaint for petitioner.

*John J. Ambrosio*, of Ambrosio & Ambrosio, Chtd., of Topeka, argued the cause for respondent, and *Frederick B. Campbell*, respondent, argued the cause pro se.

*Per Curiam*: This is an uncontested, original proceeding in discipline filed by the office of the Disciplinary Administrator against Respondent Frederick B. Campbell, a Garnett attorney licensed to practice in this state since 1998.

The Disciplinary Administrator filed a formal complaint against Respondent for his conduct in connection with his performance as county attorney for Anderson County, Kansas, alleging violations of Kansas Rules of Professional Conduct (KRPC) 4.4(a) (2008 Kan. Ct. R. Annot. 558) (embarrassment, delay, burden to third person); KRPC 8.4(d) (2008 Kan. Ct. R. Annot. 586) (conduct prejudicial to administration of justice); and KRPC 8.4(g) (conduct adversely reflecting on fitness to practice law).

### Hearing Panel's Findings of Fact and Conclusions of Law

The facts as found by Respondent's disciplinary hearing panel included the following:

In early May 2007, certain minors attended a Greeley-area party at which beer was consumed. One minor girl, C.H., who had drunk approximately six beers, was photographed by other partygoers while she had sexual intercourse with a foreign exchange student, M.V. The amateur photographers also recorded certain minors drinking beer at the party.

Within a few days, C.H. informed her school counselor that M.V. had sexually assaulted her at the party. Law enforcement was notified. During this same time period, the Anderson County Sheriff's

office was also investigating a similar report about M.V. from a second female high school student.

Law enforcement officers obtained some of the photographs taken at the May party and forwarded them to Respondent. Respondent altered the photographs to obscure faces and certain body parts but not others. He concluded that he would not pursue prosecution of M.V. because Respondent believed the sexual conduct depicted in the photographs to have been consensual.

The Anderson County Review newspaper ran an article in early July 2007 in which it discussed Respondent's view of the incident. The newspaper further reported that Respondent planned to show the photographs from the May party to the parents of minors who had attended.

Upon reading the article, C.H.'s mother contacted Respondent to tell him that he did not have her permission to show the photographs of her minor daughter to others. The Respondent challenged the mother, saying he did not need her permission. Thereafter, Respondent proceeded with his plan to show the photographs to several parents of minors who attended the party.

The newspaper ran a follow-up article regarding the photographs as well as an editorial written by Sandy Barnett, Executive Director of the Kansas Coalition Against Sexual and Domestic Violence. After counsel for C.H. and her mother contacted Respondent about sealing the photographs from public view, Respondent wrote a return letter, stating:

"As the photographs you refer to are evidence of criminal activity by several minors and as I cannot lawfully withhold evidence, I have allowed and will continue to allow the parents of potential respondents to view altered versions of them, in my office . . . .

. . . .

". . . I further want to thank you for any future litigation that you pursue in this matter as it will inevitably generate a large amount of publicity for the issue of underage drinking, hosting of minors and the harmful effects of minors engaging in public sexual acts. I was beginning to fear that nothing would be done and that this issue would fade from the public eye."

C.H. was subjected to public ridicule as a result of these events, and she now suffers from depression.

Based on the foregoing facts, the hearing panel concluded that Respondent violated KRPC 4.4 and KRPC 8.4(d) and (g), writing:

"The Respondent allowed adults to view photographs of minors consuming alcoholic beverages, photographs of C.H. partially clothed, and photographs of sexual intercourse between C.H. and M.V. The Respondent explained that his purpose in doing so was to shock the parents as to what occurs at teenage parties. The Respondent further explained that his overall goal is to decrease underage drinking. At the hearing on this matter, the Respondent acknowledged that he could have achieved his goal without allowing others to view the photographs. Further, allowing parents of minors attending the party to view photographs of C.H. partially clothed and photographs of sexual intercourse between C.H. and M.V. bears no relation to decreasing underage drinking. Thus, when the Respondent showed the pictures to the parents of the minors attending the party, he had no valid substantial legal purpose, other than to embarrass, delay, or burden third persons. Accordingly, the Hearing Panel concludes that the Respondent violated KRPC 4.4.

". . . K.S.A. [2007 Supp.] 38-2310(c) provides [that information identifying victims and alleged victims of sex offenses shall not be disclosed or open to public inspection under any circumstances]. . . .

". . . In this case, the Respondent engaged in 'conduct that is prejudicial to the administration of justice' when he violated K.S.A. 38-2310(c) by allowing parents of minors who attended the May 11, 2007, party to view the photographs. Additionally, the Respondent prejudiced justice when he failed to recognize that justice required sensitivity to the privacy rights of members of the public. As such, the Hearing Panel concludes that the Respondent violated KRPC 8.4(d).

". . . . Reluctantly, the Respondent stipulated that his conduct in this case amounted to professional misconduct because he engaged in conduct that adversely reflects on his fitness to practice law. . . . Informing the newspaper publisher that he planned to allow parents to view the photographs and allowing the parents to view the photographs [] adversely reflects on the Respondent's fitness to practice law. As such, the Hearing Panel concludes that the Respondent violated KRPC 8.4(g)."

### Hearing Panel's Recommendations Regarding Discipline

The hearing panel considered factors outlined by the American Bar Association in its Standards for Imposing Lawyer Sanctions. Pursuant to Standard 3, the factors to be considered are the duty violated, the lawyer's mental state, the potential or actual harm caused by the lawyer's misconduct, and the existence of aggravating or mitigating factors, The panel set forth the following considerations:

"*Duty Violated*. The Respondent violated his duty to the public to maintain his personal integrity. The Respondent also violated his duty to the legal profession and the legal system to comply with the rules.

"*Mental State*. The Respondent knowingly violated his duties.

"*Injury*. As a result of the Respondent's misconduct, the Respondent caused actual injury to C.H., the public in general, and the legal profession.

"*Aggravating or Mitigating Factors*. Aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed. In reaching its recommendation for discipline, the Hearing Panel, in this case, found the following aggravating factors present:

"A Pattern of Misconduct. The Respondent engaged in a pattern of misconduct by sending letters to 12 parents inviting them to observe the photographs of minors consuming alcoholic beverages, photographs of C.H. partially clothed, and photographs of sexual intercourse between C.H. and M.V. Further, the Respondent engaged in a pattern of misconduct by allowing five parents to view the photographs. Accordingly, the Hearing Panel concludes that the Respondent engaged in a pattern of misconduct.

"Refusal to Acknowledge Wrongful Nature of Conduct. In his pre-hearing responses, the Respondent consistently refused to acknowledge the wrongful nature of his conduct. At the hearing on this matter, the Respondent did admit his wrongdoing in response to his attorney's prompting, although his admission was less than fulsome. Then, as the hearing progressed, the Respondent further qualified the admission that he violated KRPC 8.4(g).

"Vulnerability of Victim. C.H. and her mother were vulnerable to the Respondent's misconduct.

"Substantial Experience in the Practice of Law. The Kansas Supreme Court admitted the Respondent to practice law in 1998. At the time the Respondent engaged in misconduct, the Respondent had been practicing law for a period of nine years. Accordingly, the Hearing Panel concludes that the Respondent had substantial experience in the practice of law at the time he engaged in the misconduct.

"Mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed. In reaching its recommendation for discipline, the Hearing Panel, in this case, found the following mitigating circumstances present:

"Absence of a Prior Disciplinary Record. The Respondent has not previously been disciplined.

"Absence of a Dishonest or Selfish Motive. Dishonesty and selfishness were not motivating factors in this case.

"Previous Good Character and Reputation in the Community Including any Letters from Clients, Friends, and Lawyers in Support of the Character and General Reputation of the Attorney. The Respondent is an active and productive member of the bar in Garnett, Kansas. He enjoys the respect of his peers and

clients and generally possesses a good character and reputation as evidenced by several letters received by the Hearing Panel."

The panel also considered Standard 5.22, which reads:

"Suspension is generally appropriate when a lawyer in an official or governmental position knowingly fails to follow proper procedure or rules, and causes injury or potential injury to a party or to the integrity of the legal process."

Before the hearing panel, the Disciplinary Administrator recommended that Respondent be publicly censured. Respondent joined in that recommendation.

Although it explicitly acknowledged the parties' agreement on the appropriate sanction, the hearing panel recommended that Respondent receive a more severe 90-day suspension from the practice of law, because his conduct was intentional rather than negligent.

### Disposition

Before this court, the Disciplinary Administrator changed his recommendation to a 90-day suspension, taking the position that Respondent had abused the power of his office and done actual harm to C.H. The Disciplinary Administrator also noted Respondent's testimony that he had reviewed the KRPCs before showing the parents the photographs; although he thought his planned conduct would raise a close question under the rules, he proceeded.

Counsel for Respondent argued to us that, although his client's conduct was egregious, it arose out of a "right reason," *i.e.*, a zeal to end underage drinking. Counsel also asserted that the record on appeal contained evidence that his client suffered from Asperger's Syndrome, a malady that impairs his ability to empathize with others and that his client had apologized to C.H.'s mother after the disciplinary hearing concluded.

When Respondent addressed this court, he echoed his counsel's "right reason" argument, saying he had seen the damage underage drinking could do and thought he could "fix the world" by showing the photographs to the parents of teens depicted drinking at the party. Nevertheless, he demonstrated little understanding of how troubling his method was. Had he been one of those parents shown the photographs, he said, he would have been angry with himself

for being a "bad parent." He also denied that he had contacted the press about his plan to display the photographs but admitted the first story followed his mention of that plan to a reporter and another lawyer during a Rotary meeting. He stated explicitly that he did not understand why other women and girls who believed themselves to be victims of sex crimes might now be reluctant to report the crimes or assist with prosecutions. Also, despite his counsel's assertion that he had several mentors who would guide the exercise of his prosecutorial discretion, he had not pursued any independent review of his decision not to prosecute in C.H.'s case. Regarding Asperger's Syndrome, Respondent said he had been diagnosed with Attention Deficit Disorder (ADD) during his first year of law school and that there was a letter in the record on appeal about his condition. In addition, he took the position that his condition had worked to his advantage as a prosecutor because he could be dispassionate when evaluating cases.

The letter in the record on appeal to which both Respondent and his counsel evidently referred was written by Respondent's doctor. It confirms that Respondent has a diagnosis of ADD. Beyond that, it says only: "[Campbell] also presents with other personal characteristics that have become apparent during his years of treatment. The possible diagnosis of high functioning Autism - Asperger's Disorder has been considered during his treatment. At this point, my professional medical opinion is he does not present with sufficient criteria for diagnosing those conditions, however, one does not need to meet the full level of intensity to make a definitive subsymdromal diagnosis." Counsel for Respondent, although he discussed Asperger's Syndrome in his argument, explicitly did not invoke it as a defense to the conduct in which Respondent engaged.

In attorney disciplinary proceedings, this court considers the evidence, the findings of the disciplinary panel, and the arguments of the parties, and determines whether violations exist. If they do, this court decides the discipline to be imposed. Any attorney misconduct must be established by substantial, clear, convincing, and satisfactory evidence. *In re Comfort*, 284 Kan. 183, 190, 159 P.3d 1011 (2007); *In re Lober*, 276 Kan. 633, 636, 78 P.3d 442 (2003).

This court views the findings of fact, conclusions of law, and recommendations made by a disciplinary panel as advisory only, but we give the panel's final hearing report the same dignity as a special verdict by a jury or the findings of a trial court. Therefore, the panel's findings of fact will be adopted when amply sustained by the evidence and not adopted when against the clear weight of the evidence. When the panel's findings relate to matters about which there was conflicting testimony, this court recognizes that the panel, as the trier of fact, had the opportunity to observe the witnesses and evaluate their demeanor. This court does not reweigh the evidence or assess the credibility of witnesses. *Comfort*, 284 Kan. at 190. Moreover, it is not necessary to restate the entire record to show substantial competent evidence to support the panel's findings. *In re Kellogg*, 269 Kan. 143, 153, 4 P.3d 594 (2000).

There are no disputed facts in this case. And the facts, as established, amply support the conclusions about violations of KRPC 4.4 and KRPC 8.4(d) and (g) at which the disciplinary hearing panel arrived. We therefore adopt the findings of fact and conclusions of law of the panel.

This court is empowered to impose any form of discipline or conditions separate from or connected to any type of discipline it deems appropriate, regardless of whether that form or type of discipline has been recommended by a hearing panel. Supreme Court Rule 203(a)(5) (2008 Kan. Ct. R. Annot. 266). In view of what we discern as Respondent's continued inability or unwillingness to come to grips with the devastation his conduct has wrought in at least one life and the potential for it to chill reports from victims of future sex crimes and their cooperation with prosecutions of dangerous offenders, we believe a 90-day suspension to be an inadequate sanction. We instead order a 6-month suspension from the practice of law and shall require Respondent to follow the procedure outlined in Supreme Court Rule 219 (2008 Kan. Ct. R. Annot. 365) to be reinstated. A minority of the court would impose a longer period of suspension. In addition, because Respondent and his counsel raised substantial concerns at oral argument about the possibility that a medical or psychological condition may have

contributed to the sanctioned conduct, the existence and/or effect of such a condition on Respondent's future behavior should be among the issues addressed by the Rule 219 procedure.

IT IS THEREFORE ORDERED that Frederick B. Campbell be suspended for 6 months from the practice of law and that he shall follow the procedure outlined in Rule 219 to be reinstated.

IT IS FURTHER ORDERED that the costs of the proceeding be assessed to Respondent.

MCFARLAND, C.J., not participating.

HILL, J., assigned.