No. 93,996

In the Matter of MARCUS B. POTTER, JR., *Respondent.*

112 P.3d 216

Opinion filed June 3, 2005.

*Stanton A. Hazlett,* disciplinary administrator, argued the cause and was on the formal complaint for petitioner.

*John P. Biscanin,* of Kansas City, argued the cause for respondent, and *Marcus B. Potter, Jr.,* respondent, argued the cause pro se.

*Per Curiam:* This is an original uncontested proceeding in discipline filed by the office of the Disciplinary Administrator against respondent, Marcus B. Potter, Jr., whose last registration address with the Clerk of the Appellate Courts of Kansas is Kansas City, Kansas. Potter was admitted to the practice of law in the state of Kansas in July 1978.

The alleged misconduct arises from four complaints, DA9003, DA9016, DA 9086, and DA9197, which regard the respondent's representation of clients Jamie Trzcinski, Michael Barnes, Shara Crawford, and Larry Caldwell, respectively.

On September 2, 2004, the Disciplinary Administrator filed a formal complaint. The respondent answered admitting all of the factual allegations of all counts. A panel of the Kansas Board for Discipline of Attorneys conducted a formal hearing on December 7, 2004. At the hearing, the respondent stipulated to violations of KRPC 1.3 (2004 Kan. Ct. R. Annot. 354) (diligence); KRPC 1.4 (2004 Kan. Ct. R. Annot. 367) (communication); KRPC 1.15 (2004 Kan. Ct. R. Annot. 414) (safekeeping property); and Supreme Court Rule 207 (2004 Kan. Ct. R. Annot. 261), as to counts I, II, and III; and KRPC 1.3 (diligence); KRPC 1.4 (communication); and Supreme Court Rule 207, as to count IV. The Disciplinary Administrator moved to amend the formal complaint to delete the allegations of additional violations. The panel later prepared a report containing its findings of fact, conclusions of law, and recommendations for discipline. The respondent filed no exceptions

to the report. The underlying facts found by the panel concerning these violations are summarized as follows:

## FINDINGS OF FACT

*Complaint of Jamie Trzcinski* (DA9003)

In June 2002, Jamie Trzcinski retained the respondent to file a bankruptcy in her behalf. Ms. Trzcinski paid him a fee of $400. She agreed to pay the respondent an additional $350 in installments until the total fee was paid. The respondent agreed to accept the additional payment in installments as long as the total amount was received before the bankruptcy was discharged. Ms. Trzcinski provided all the necessary paperwork to file the bankruptcy to the respondent, including copies of bills, original tax returns, and other papers.

After a number of weeks passed without hearing from the respondent, Ms. Trzcinski began calling him. The respondent failed to return her telephone calls.

On November 12, 2002, after still not hearing from the respondent, Ms. Trzcinski faxed the respondent a note. The respondent did not respond to her note.

In early 2003, Ms. Trzcinski again wrote to the respondent. This time, however, she demanded that he refund the funds paid and return the paperwork provided. The respondent did not respond to Ms. Trzcinski's letter, did not return the unearned fee, and did not return the paperwork to her.

After waiting 15 months for the respondent to file the bankruptcy, on September 2, 2003, Ms. Trzcinski filed a complaint with the Disciplinary Administrator's office. On September 10, 2003, the Disciplinary Administrator wrote to the respondent directing that he respond to the initial complaint within 20 days.

John M. Duma of the Wyandotte County Ethics and Grievance Committee was assigned to investigate Ms. Trzcinski's complaint. On September 15, 2003, Mr. Duma wrote to the respondent and reminded him that the Disciplinary Administrator had directed that a response be provided within 20 days. The respondent did not provide a written response.

On October 23, 2003, Mr. Duma met with the respondent. Mr. Duma asked the respondent why he had not completed the bankruptcy. The respondent said that he had "a severe case of procrastination." At that time, Mr. Duma requested that the respondent forward to Mr. Duma a copy of his Trzcinski file.

On November 6, 2003, Mr. Duma sent the respondent a letter reminding him to provide a copy of Ms. Trzcinski's file. The respondent did not provide Mr. Duma a copy of the file nor did he return Ms. Trzcinski's original paperwork to her.

*Complaint of Michael Barnes* (DA9016)

In January, 1999, the respondent represented Michael Barnes in an action for divorce. During the representation, the respondent and Mr. Barnes discussed that a Qualified Domestic Relations Order would need to be completed to split his retirement with his ex-wife. After a period of time, Mr. Barnes' ex-wife contacted the respondent requesting that the Qualified Domestic Relations Order be completed. The respondent contacted Mr. Barnes and informed him that before the Qualified Domestic Relations Order could be completed, Mr. Barnes would need to pay an additional $200. On September 18, 2002, Mr. Barnes sent the respondent a check for $200 for that purpose.

Even though the respondent had not yet earned the fee, he deposited the check into his operating account.

Mr. Barnes subsequently called the respondent on approximately 20 occasions. Each time he left a message asking about the status of the Qualified Domestic Relations Order. The respondent did not return any of the calls.

On August 28, 2003, Mr. Barnes' present wife, Janice Barnes, called the respondent and left a message on his answering machine directing the respondent to refund the $200. The respondent did not return the call.

On September 13, 2003, after waiting 12 months for the order, Mr. Barnes filed a complaint with the Disciplinary Administrator's office. On September 18, 2003, the Disciplinary Administrator wrote to the respondent directing that he respond to the initial complaint within 20 days.

Mr. Duma was assigned to also investigate Mr. Barnes' complaint. On September 22, 2003, he wrote to the respondent and reminded him that the Disciplinary Administrator had directed that a response be provided within 20 days. The respondent did not provide a written response.

On October 23, 2003, Mr. Duma met with the respondent. The respondent told Mr. Duma that he had received Mr. Barnes' money but that he had not completed the work because of "a severe case of procrastination." Mr. Duma then requested that the respondent forward a copy of the Barnes file to him.

On November 6, 2003, Mr. Duma sent the respondent a letter reminding him to provide a copy of Mr. Barnes' file. The respondent did not provide Mr. Duma with a copy.

*Complaint of Shara Crawford* (DA9086)

On June 11, 2003, Shara Crawford retained the respondent to file a Chapter 7 bankruptcy case in her behalf. Ms. Crawford paid him $300 and provided a file containing all of her financial information. The respondent instructed Ms. Crawford to notify her creditors of her intention and provide them with the respondent's name and telephone number. She followed the respondent's advice.

After her initial meeting with the respondent, Ms. Crawford called him on numerous occasions and left messages. The respondent did not return the calls.

Ms. Crawford's creditors eventually notified her that the respondent was not responding to their telephone calls; they threatened to turn the bills over to collection agencies.

On November 5, 2003, Ms. Crawford wrote to the respondent and requested that he return the unearned fee and her documentation. The respondent did not respond.

On December 10, 2003, Ms. Crawford filed a complaint with the Disciplinary Administrator's office. On December 24, 2003, the Disciplinary Administrator wrote to the respondent directing that he respond to the initial complaint within 20 days.

Mr. Duma was assigned to also investigate Ms. Crawford's complaint. On January 16, 2003, he wrote to the respondent and re-

minded him that the Disciplinary Administrator had directed that a response be provided within 20 days. The respondent did not provide a written response.

*Complaint of Larry C. Caldwell* (DA9197)

On September 5, 2003, Larry C. Caldwell retained the respondent to prepare a deed to transfer the ownership of real property located in Kansas City, Kansas. Mr. Caldwell paid the respondent $500 for the service.

Mr. Caldwell later made several attempts to contact the respondent by telephone. The respondent failed to return the calls.

On April 5, 2004, Mr. Caldwell wrote asking the respondent to contact him regarding the representation as soon as possible. The respondent failed to respond.

Mr. Caldwell forwarded a copy of his April 5, 2004, letter to the Disciplinary Administrator's office as a letter of complaint.

On April 12, 2004, the Disciplinary Administrator wrote to the respondent directing that he respond to the initial complaint within 20 days.

Mr. Duma was assigned to also investigate Mr. Caldwell's complaint. On April 19, 2004, he wrote to the respondent and reminded him that the Disciplinary Administrator had directed that a response be provided within 20 days. The respondent did not provide a written response.

In July, 2004, the respondent finally contacted Mr. Caldwell. Thereafter, he filed an action in Wyandotte County District Court in behalf of Mr. Caldwell. The action remains pending.

## PANEL'S CONCLUSIONS OF LAW

Based upon the above uncontested facts, the panel concluded, as a matter of law, that the respondent violated KRPC 1.3, KRPC 1.4, KRPC 1.15, and Supreme Court Rule 207(b), as detailed below.

*KRPC 1.3*

Attorneys must act with reasonable diligence and promptness in representing their clients. See KRPC 1.3. In this case, the respondent failed to provide diligent representation to Ms. Trzcinski, Mr.

Barnes, Ms. Crawford, and Mr. Caldwell. Specifically, he failed to file bankruptcy cases for Ms. Trzcinski and Ms. Crawford. He failed to prepare the Qualified Domestic Relations Order for Mr. Barnes, and failed to prepare appropriate documents to transfer the property in behalf of Mr. Caldwell. Because the respondent failed to act with reasonable diligence and promptness in representing his clients, the hearing panel concluded that he violated KRPC 1.3.

*KRPC 1.4*

KRPC 1.4(a) provides that "[a] lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information." (2004 Kan. Ct. R. Annot. 367.) In this case, the respondent violated KRPC 1.4(a) when he failed to comply with reasonable requests for information from Ms. Trzcinski, Mr. Barnes, Ms. Crawford, and Mr. Caldwell, and when he failed to respond to numerous telephone messages and letters. Accordingly, the hearing panel concluded that he violated KRPC 1.4(a).

*KRPC 1.15*

Attorneys must safeguard client's property. KRPC 1.15(a) prohibits attorneys from commingling their funds with the funds of their clients, as follows:

"A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained in the state of Kansas. Other property shall be identified as such and appropriately safeguarded. Complete records of such account funds and other property shall be kept by the lawyer and shall be preserved for a period of five years after termination of the representation." (2004 Kan. Ct. R. Annot. 414.)

The respondent violated KRPC 1.15(a) when he deposited the unearned fees paid by Mr. Barnes into his operating account rather than into his trust account. Accordingly, the hearing panel concluded that he violated KRPC 1.15(a).

Lawyers must return unearned fees and client property upon request. In that regard, KRPC 1.15(b) provides:

"Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this Rule or otherwise permitted by law or by agreement with the client, *a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive* and, upon request by the client or third person, shall promptly render a full accounting regarding such property." (Emphasis added.) (2004 Kan. Ct. R. Annot. 414.)

The respondent violated KRPC 1.15(b) when he failed to return Ms. Trzcinski's unearned fee and financial documentation, failed to return Mr. Barnes' unearned fee, and failed to return Ms. Crawford's unearned fee and financial documentation. The hearing panel concluded that he violated KRPC 1.15(b).

*Supreme Court Rule 207(b)*

Supreme Court Rule 207(b) provides as follows:

"It shall be the duty of each member of the bar of this state to aid the Supreme Court, the Disciplinary Board, and the Disciplinary Administrator in investigations concerning complaints of misconduct, and to communicate to the Disciplinary Administrator any information he or she may have affecting such matters." (2004 Kan. Ct. R. Annot. 261.)

In this case, the respondent violated Supreme Court Rule 207(b) when he failed to provide a written response to the initial complaints filed by Ms. Trzcinski, Mr. Barnes, Ms. Crawford, and Mr. Caldwell. Accordingly, the hearing panel concluded that he violated Supreme Court Rule 207(b).

## PANEL'S RECOMMENDATION

The hearing panel next considered the factors outlined by the American Bar Association in its Standards for Imposing Lawyer Sanctions (hereinafter Standards). Pursuant to Standard 3, the factors to be considered are the duty violated, the lawyer's mental state, the potential or actual injury caused by the lawyer's misconduct, and the existence of aggravating or mitigating factors.

On the subjects of Duty Violated and Mental State, the respondent knowingly violated his duty to his clients to provide diligent representation and adequate communication. He also violated his duty to his clients to safeguard their property and timely return unearned fees and personal documentation. Finally, he violated his

duty to the legal profession to cooperate in disciplinary investigations.

On the subject of Injury, as a result of the respondent's misconduct, he caused actual and potential injury to each of his clients. Ms. Trzcinski waited over 15 months for him to file a bankruptcy action on her behalf; he never filed the action. Mr. Barnes waited 1 year for him to prepare the Qualified Domestic Relations Order; he never prepared the order. Ms. Crawford waited 6 months for the respondent to file a bankruptcy action on her behalf. During the time she was waiting for him to act, creditors continued to contact her regarding the outstanding financial obligations. Finally, it took the respondent 10 months to make any progress on Mr. Caldwell's request to have the ownership of real property transferred. The delays caused by the respondent injured his clients. Additionally, he injured his clients when he failed to timely return unearned fees and personal documentation.

On the subject of Aggravating Factors, several were present. In regard to Prior Disciplinary Offenses, the respondent has been previously disciplined in eight cases.

On September 29, 1988, the Disciplinary Administrator informally admonished him for having violated MRPC 1.4 when he failed to communicate with a client in an estate matter, complaint B4392.

In 1991, following a formal hearing before a hearing panel, the Disciplinary Administrator informally admonished the respondent for having violated DR 6-101(A)(3), MRPC 1.3, and MRPC 1.4(a) in an estate matter, complaint B4536.

On January 23, 1998, the Kansas Supreme Court censured the respondent for having violated MRPC 1.1, MRPC 1.2(a), MRPC 1.3, MRPC 1.4(a) and (b), MRPC 1.5(d), MRPC 8.1(a), MRPC 8.4(d) and (g), and Supreme Court Rule 207 in a personal injury case. The court published the censure at *In re Potter*, 263 Kan. 766, 952 P.2d 936 (1998).

On July 28, 1998, the Disciplinary Administrator informally admonished the respondent in four separate cases. In A6467, the Disciplinary Administrator informally admonished him for having violated KRPC 1.1, KRPC 1.3 KRPC 1.4, KRPC 1.16,and KRPC

8.4 in an estate matter. In A6566, the Disciplinary Administrator informally admonished him for having violated KRPC 1.1, KRPC 1.4, and KRPC 8.4 in a divorce case. In A6642 and A6643, the Disciplinary Administrator informally admonished him for having violated Supreme Court Rule 207 in a divorce case. In A7002, the Disciplinary Administrator informally admonished him for having violated KRPC 1.3, KRPC 1.4, and Supreme Court Rule 207 in a child support and visitation case.

Finally, on February 20, 2003, the Disciplinary Administrator informally admonished the respondent for having violated KRPC 1.3 in a paternity action, complaint DA8481.

Additionally, regarding Prior Disciplinary Offenses, included in the instant case are four complaints. The complaints involve similar misconduct. Moreover, some of the previous eight cases included violations of the rules violated in this case. As a result, the respondent has clearly engaged in a pattern of misconduct.

Regarding Multiple Offenses, the respondent violated KRPC 1.3, KRPC 1.4, KRPC 1.15, and Supreme Court Rule R. 207. As such, he committed multiple offenses.

Regarding the Vulnerability of Victim, each of the respondent's clients who complained in this case were vulnerable to his misconduct. Ms. Trzcinski and Ms. Crawford were particularly vulnerable to his misconduct as they were already in serious financial trouble, *i.e.,* seeking bankruptcy.

Regarding the aggravating factor of Substantial Experience in the Practice of Law, the Kansas Supreme Court admitted the respondent to practice law in 1978. At the time he engaged in misconduct, he had been practicing law for a period of 24 years. Accordingly, the hearing panel concluded that he had substantial experience in the practice of law at the time he engaged in the misconduct.

Regarding Indifference to Making Restitution, even though the respondent has wrongfully retained the unearned fees from three of his clients, he failed to make a timely effort to return the unearned fees.

Some Mitigating Circumstances were present. Regarding the Absence of a Dishonest or Selfish Motive, dishonesty and selfish-

ness were not motivating factors in this case. Regarding Remorse, at the hearing on the formal complaint, the respondent expressed genuine remorse.

In addition to the above-cited factors, the hearing panel thoroughly examined and considered the following Standards: "Suspension is generally appropriate when: (a) a lawyer knowingly fails to perform services for a client and causes injury or potential injury to a client; or (b) a lawyer engages in a pattern of neglect and causes injury or potential injury to a client." Standard 4.42. "Reprimand is generally appropriate when a lawyer is negligent and does not act with reasonable diligence in representing a client, and causes injury or potential injury to a client." Standard 4.43. "Suspension is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed to the profession, and causes injury or potential injury to a client, the public, or the legal system." Standard 7.2. "Suspension is generally appropriate when a lawyer has been reprimanded for the same or similar misconduct and engages in further acts of misconduct that cause injury or potential injury to a client, the public, the legal system, or the profession." Standard 8.2.

The Disciplinary Administrator asked that the hearing panel recommend to the Kansas Supreme Court that the respondent be suspended from the practice of law for a period of 2 years. The Disciplinary Administrator further recommended that prior to allowing the respondent to return to the practice of law, he undergo a reinstatement hearing pursuant to Supreme Court Rule 219 (2004 Kan. Ct. R. Annot. 312.).

The respondent asked the hearing panel that he be placed on probation. The plan of probation he submitted was the informal monitoring agreement developed by the Kansas Lawyer Assistance Program, with several exceptions, *i.e.,* that the respondent was not involved in the use of alcohol or mind altering drugs. None of the blanks in the agreement were completed. Nor did the respondent identify a monitoring attorney. Counsel for the respondent urged the panel to take the proposal and add to it whatever they felt would be appropriate given the circumstances of this case.

The panel determined that in order to recommend that a respondent be placed on probation, it must make specific findings. In that regard, it acknowledged that Supreme Court Rule 211(g) (2004 Kan. Ct. R. Annot. 277) provides, in pertinent part, as follows:

"(3) The Hearing Panel shall not recommend that the Respondent be placed on probation unless:

(i) the Respondent develops a workable, substantial, and detailed plan of probation and provides a copy of the proposed plan of probation to the Disciplinary Administrator and each member of the Hearing Panel at least ten days prior to the hearing on the Formal Complaint;

(ii) the Respondent puts the proposed plan of probation into effect prior to the hearing on the Formal Complaint by complying with each of the terms and conditions of the probation plan;

(iii) at the hearing on the Formal Complaint, the Respondent presents evidence that the case involves unique circumstances (unique circumstances are circumstances from which it could be inferred that the Respondent's misconduct was a one time response to adversity and that it would be highly unlikely that the Respondent would repeat the mistake);

(iv) the misconduct can be corrected by probation; and

(v) placing the Respondent on probation is in the best interests of the legal profession and the citizens of the State of Kansas."

The hearing panel carefully reviewed the respondent's plan of probation. It concluded that the plan was not workable, substantial, or detailed. While counsel for the respondent suggested that the panel add terms to the plan, the panel concluded that was not its responsibility. The panel also found that there were no unique circumstances present. Finally, it concluded that placing the respondent on probation was not in the best interests of the legal profession or the citizens of the state of Kansas. In short, the hearing panel concluded that probation was not appropriate.

In reaching its recommendation, the hearing panel carefully weighed the findings of fact, conclusions of law, the Standards listed above, and the recommendations of the parties. The panel found that the respondent's extensive disciplinary history was of particular concern. The panel concluded that to date, none of the discipline imposed apparently had impressed the respondent to the degree necessary to change his behavior. Accordingly, the panel unanimously recommended that the respondent be suspended

from the practice of law in the state of Kansas for a period of 18 months. It further recommended that the respondent undergo a reinstatement hearing, pursuant to Supreme Court Rule 219, prior to being allowed to resume the practice of law. Finally, the panel concluded that costs should be assessed against the respondent in an amount to be certified by the office of the Disciplinary Administrator.

## DISCUSSION

To warrant a finding of misconduct, the charges must be established by clear and convincing evidence. Supreme Court Rule 211(f) (2004 Kan. Ct. R. Annot. 275); *In re Rathburn*, 275 Kan. 920, 929, 69 P.3d 537 (2003). A hearing panel's report is deemed admitted under Supreme Court Rule 212(c) and (d) (2004 Kan. Ct. R. Annot. 285) when a respondent fails to file exceptions. *In re Boaten*, 276 Kan. 656, 663, 78 P.3d 458 (2003). In the case at hand, since respondent filed no exceptions to the panel's report, we conclude that the panel's findings of fact are supported by clear and convincing evidence and that the facts established support the panel's conclusions of law. We therefore adopt the panel's findings and conclusions, but not its recommended discipline.

The panel recommended an 18-month suspension, and the Disciplinary Administrator recommended a 2-year suspension. Both recommended reinstatement only upon a reinstatement hearing. We conclude that because of respondent's numerous disciplinary violations and the recurring pattern of those violations — which have caused injury to clients, the public, the legal system, and the profession — indefinite suspension is warranted. The level of discipline should impress upon the respondent the necessity of changing his behavior.

IT IS THEREFORE ORDERED that Marcus B. Potter, Jr., be and he is hereby indefinitely suspended from the practice of law in the state of Kansas effective as of the date of this opinion.

IT IS FURTHER ORDERED that Marcus B. Potter, Jr., shall comply with Supreme Court Rule 218 (2004 Kan. Ct. R. Annot. 301), and in the event the respondent should seek reinstatement, he shall

comply with Supreme Court Rule 219 (2004 Kan. Ct. R. Annot. 312).

IT IS FURTHER ORDERED that this opinion be published in the official Kansas Reports and that respondent pay the costs of these proceedings.

LOCKETT, J., Retired, assigned.