No. 101,485

In the Matter of TROY H. ELLIS, *Respondent.*

(204 P.3d 1161)

Opinion filed April 17, 2009.

*Alexander M. Walczak*, deputy disciplinary administrator, argued the cause, and *Stanton A. Hazlett*, disciplinary administrator, was with him on the formal complaint for petitioner.

*Troy H. Ellis*, respondent, argued the cause pro se.

*Per Curiam*: This is an original proceeding in discipline filed by the office of the Disciplinary Administrator against Troy H. Ellis, of Tulsa, Oklahoma, an attorney admitted to the practice of law in Kansas.

The formal complaint filed against the respondent alleged a violation of Kansas Rule of Professional Conduct (KRPC) 8.4(b) (2008 Kan. Ct. R. Annot. 586) (commission of a criminal act) and KRPC 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation). A hearing was held before a panel of the Kansas Board for Discipline of Attorneys, where the respondent was both personally present and represented by counsel. Upon conclusion of the hearing, the panel made the following findings of fact and conclusions of law, together with its recommendation to this court:

"FINDINGS OF FACT

"The Hearing Panel finds the following facts, by clear and convincing evidence:

"1.  Troy H. Ellis (hereinafter 'the Respondent') is an attorney at law, Kansas Attorney Registration No. 16979. His last registration address with the Clerk of the Appellate Courts of Kansas is . . . Tulsa, Oklahoma . . . . The Respondent was admitted to the practice of law in the State of Kansas on August 25, 1995.

"2.  In 2001, the Respondent began working for Koch Industries, Inc. (hereinafter 'Koch') as in-house counsel. Then, in June, 2005, he was transferred to Invista, a subsidiary of Koch.

"3.  Eurest Café is a food vendor for Koch and Invista. Eurest Café is not owned or operated by Koch or Invista.

"4.  In August, 2007, Michelle Harjo and Patty Swartz, Eurest cashiers, and Dawn Knueppel, Eurest Catering Manager, observed the Respondent in the Eu-

rest Café place food from the café on his tray, and leave the café without paying for the food.

"5. From September 3, 2007, through September 7, 2007, the cashiers observed the Respondent take food several times without paying for it.

"6. As a result of the Respondent's conduct, on September 10, 2007, security employees installed a video camera in the café.

"7. On September 21, 2007, Ms. Harjo observed the Respondent enter the café, place food on his tray, and leave without paying for the food. The Respondent's conduct was not captured by the video camera.

"8. On September 25, 2007, and September 27, 2007, the Respondent entered the café, placed food on his tray, and left without paying for the food. The Respondent's conduct was captured by the video camera.

"9. On September 28, 2007, Mark Holden, General Counsel for Koch, and Gina Morris, Vice President for Compliance and Ethics for Invista, confronted the Respondent regarding his activities in the café. The Respondent denied stealing food from the café. Later that day and after viewing a video recording of his activities, the Respondent admitted the misconduct.

"10. Also on September 28, 2007, the Respondent sent an electronic mail message to Mr. Holden. In the message, the Respondent stated:

'I am embarrassed and disgusted for myself and apologize to you and the Koch companies. I lied. I stole. I violated the Code of Conduct.

'I can't find any reason for my actions other than I wasn't thinking. I could write paragraphs on what was going through my mind and various excuses for what occurred. But the simple fact is—none of that matters and there is no excuse. I have had to tell my parents, who are here, my wife and my children what I did. I received no sympathy and the same question—why? I have no good answer, but have searched within myself for any other type of behavior that remotely connects to this blatant error in judgment. I can come up with none.

'I understand that I have placed you in a bad position and only you will be able to determine whether you can trust me again. This is an isolated incident and out of character. I encourage you to take a look at my past actions in making your determination.

'I take full responsibility and accountability for this action. I understand that as a legal leader, I am responsible for leading the way towards [sic] integrity and compliance. I failed in this instance. I put this to you in writing because I know and believe that I conduct my actions with honesty, respect and integrity. I will have to prove that again.

'I apologize. With great humility and a heavy heart, I ask you please to consider my apology in determining your course of action.'

"11. Mr. Holden and Ms. Morris directed the Respondent to self-report his conduct to the Disciplinary Administrator's office. On October 11, 2007, the Respondent sent a letter to the Disciplinary Administrator. The letter provided:

'I believe it is important that attorneys conduct themselves both in providing services to clients and in their personal affairs in accordance with the requirements

of the law. I believe that I should self-report a potential conduct issue under the Kansas Rules of Professional Conduct ('Rules').

'I have been employed as in-house counsel by Koch Industries, Inc. and IN-VISTA located in Wichita, Kansas over the last 6 years. Prior to joining these companies in-house, I practiced in the private law firm arena for 7 years. During the week of September 24, 2007, I was accused by my company of taking lunches from the cafeteria without paying. I initially denied this accusation, but after the company presented me with certain evidence, I admitted that same day (in person and in writing) that due to oversight and time pressure I did not immediately pay for those lunches, but intended to in the future. I have offered to reimburse the cafeteria and my company on several occasions, the first being on September 28, 2007. No other evidence of misconduct was presented to me by my company and I have since been forced to resign my employment.

'I self-report this potential misconduct to you as I feel it is my obligation to do so under the Rules. I welcome the opportunity to meet with appropriate authorities of the Bar Association to answer any further questions you may have regarding this matter.

'If I can provide you with any additional information regarding the nature or circumstances of this self-reporting, I stand willing to cooperate.'

"12. While the Respondent's letter indicates that he later offered to pay for the lunches, the Respondent has never made that offer to Eurest Café. As of the date of the hearing, the Respondent had not paid for the food he stole.

## "CONCLUSIONS OF LAW

"1. Based upon the findings of fact, the Hearing Panel concludes as a matter of law that the Respondent violated KRPC 8.4(b) and KRPC 8.4(c), as detailed below.

"2. 'It is professional misconduct for a lawyer to . . . commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects.' KRPC 8.4(b). In this case, the Respondent committed a crime, specifically, the crime of theft. See K.S.A. 21-3701. Theft is a crime that reflects directly on the Respondent's honesty and trustworthiness. Accordingly, the Hearing Panel concludes that the Respondent committed criminal acts and those criminal acts reflect directly on the Respondent's honesty and trustworthiness, in violation of KRPC 8.4(b).

"3. 'It is professional misconduct for a lawyer to . . . engage in conduct involving dishonesty, fraud, deceit or misrepresentation.' KRPC 8.4(c). The Respondent engaged in conduct that involved dishonesty when he took food from Eurest Café without paying for it. As such, the Hearing Panel concludes that the Respondent violated KRPC 8.4(c).

## "AMERICAN BAR ASSOCIATION
### STANDARDS FOR IMPOSING LAWYER SANCTIONS

"In making this recommendation for discipline, the Hearing Panel considered

the factors outlined by the American Bar Association in its Standards for Imposing Lawyer Sanctions (hereinafter 'Standards'). Pursuant to Standard 3, the factors to be considered are the duty violated, the lawyer's mental state, the potential or actual injury caused by the lawyer's misconduct, and the existence of aggravating or mitigating factors.

"*Duty Violated.* The Respondent violated his duty to the public to maintain his personal integrity.

"*Mental State.* The Respondent knowingly violated his duty.

"*Injury.* As a result of the Respondent's misconduct, the Respondent caused actual injury to the legal profession.

"*Aggravating or Mitigating Factors.* Aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed. In reaching its recommendation for discipline, the Hearing Panel, in this case, found the following aggravating factors present:

"Dishonest or Selfish Motive. Committing the crime of theft involves dishonest conduct. Engaging in dishonest conduct is an aggravating factor.

"A Pattern of Misconduct. The Respondent took food from the café without paying for it on multiple occasions during the months of August and September, 2007. As such, the Hearing Panel concludes that the Respondent engaged in a pattern of misconduct.

"Substantial Experience in the Practice of Law. The Kansas Supreme Court admitted the Respondent to practice law in 1995. At the time the Respondent engaged in misconduct, the Respondent had been practicing law for a period of 12 years. Accordingly, the Hearing Panel concludes that the Respondent had substantial experience in the practice of law at the time he engaged in the misconduct.

"Illegal Conduct, Including that Involving the Use of Controlled Substances. The Respondent engaged in illegal conduct when he stole food from Eurest Café.

"Mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed. In reaching its recommendation for discipline, the Hearing Panel, in this case, found the following mitigating circumstances present:

"Absence of a Prior Disciplinary Record. The Respondent has not previously been disciplined.

"Previous Good Character and Reputation in the Community Including any Letters from Clients, Friends, and Lawyers in Support of the Character and General Reputation of the Attorney. The Respondent was an active and productive member of the bar in Wichita, Kansas. He enjoys the respect of his peers and clients and generally possesses a good character and reputation as evidenced by a number of letters and testimony received by the Hearing Panel.

"Imposition of Other Penalties or Sanctions. As a result of the misconduct, the Respondent was forced to resign his position with Invista.

"Remorse. At the hearing on the Formal Complaint, the Respondent expressed genuine remorse.

"In addition to the above-cited factors, the Hearing Panel has thoroughly examined and considered the following Standards:

'Reprimand is generally appropriate when a lawyer knowingly engages in any other conduct that involves dishonesty, fraud, deceit, or misrepresentation and that adversely reflects on the lawyer's fitness to practice law.' Standard 5.13.

### "RECOMMENDATION

"The Deputy Disciplinary Administrator and counsel for the Respondent recommended that the Respondent be censured by the Kansas Supreme Court. The Deputy Disciplinary Administrator and counsel for the Respondent also recommended that the censure be published in the Kansas Reports.

"Based upon the findings of fact, conclusions of law, and the Standards listed above, the Hearing Panel unanimously recommends that the Respondent be censured by the Kansas Supreme Court. The Hearing Panel further recommends that the censure be published in the Kansas Reports. Finally, the Hearing Panel recommends that the Respondent be ordered to make restitution to Eurest Café.

"Costs are assessed against the Respondent in an amount to be certified by the Office of the Disciplinary Administrator."

The respondent elected not to file any exceptions to the final hearing report of the panel. Thus, the respondent admits the allegations of the complaint. Supreme Court Rule 212(d) (2008 Kan. Ct. R. Annot. 327). This court also finds that the allegations in the disciplinary complaint against the respondent have been established by clear and convincing evidence, and the court adopts the findings of the hearing panel.

The Disciplinary Administrator recommended to the panel that the respondent be censured by the Kansas Supreme Court and that the court publish the censure in the Kansas Reports. The respondent concurred in this recommendation when he appeared before the hearing panel. During his hearing before this court, however, the respondent agreed that he should be censured but asked that the censure not be published. The respondent recounted the punishment he had sustained as a result of his violations including the loss of his job, the impact upon his family, and the embarrassment in front of friends and family, together with his inability to find employment. We are not impervious to the difficulties experienced by the respondent because of his conduct. Yet we cannot ignore the fact that the respondent engaged in the criminal act of theft and upon discovery lied about his activities. Under

these circumstances we conclude that the panel's unanimous recommendation of published censure and restitution to Eurest Café is the appropriate discipline.

IT IS THEREFORE ORDERED that the respondent, Troy H. Ellis, be and he is hereby disciplined by published censure in accordance with Supreme Court Rule 203(a)(3) (2008 Kan. Ct. R. Annot. 266) for violations of KRPC 8.4(b) and (c).

IT IS FURTHER ORDERED that the respondent make restitution to the Eurest Café for meals taken and report to the Disciplinary Administrator when restitution has been accomplished.

IT IS FURTHER ORDERED that this opinion be published in the official Kansas Reports and that the costs of these proceedings be assessed against the respondent.