No. 101,115

In the Matter of STEVEN KEITH WOODRING, *Respondent*.
(210 P.3d 120)

Opinion filed June 26, 2009.

*Stanton A. Hazlett*, disciplinary administrator, argued the cause and was on the brief for the petitioner.

*Steven K. Woodring*, respondent, argued the cause and was on the brief pro se.

*Per Curiam*: This is a contested proceeding in discipline filed by the Disciplinary Administrator against Respondent, Steven K. Woodring, of Clearwater, an attorney admitted to the practice of law since 1986.

A hearing panel of the Kansas Board for Discipline of Attorneys conducted an evidentiary hearing and found Respondent violated eight rules of the Kansas Rules of Professional Conduct (KRPC):

KRPC 1.1 (2008 Kan. Ct. R. Annot. 400) (competence);

KRPC 1.3 (2008 Kan. Ct. R. Annot. 415) (diligence);

KRPC 1.4 (2008 Kan. Ct. R. Annot. 432) (communication);

KRPC 1.15 (2008 Kan. Ct. R. Annot. 493) (safekeeping property);

KRPC 3.3 (2008 Kan. Ct. R. Annot. 531) (candor toward the tribunal);

KRPC 5.5 (2008 Kan. Ct. R. Annot. 565) (unauthorized practice of law);

KRPC 8.1 (2008 Kan. Ct. R. Annot. 579) (bar admission and disciplinary matters); and

KRPC 8.4 (2008 Kan. Ct. R. Annot. 586) (misconduct).

In addition, the hearing panel determined Respondent violated Supreme Court Rule 207(b) (2008 Kan. Ct. R. Annot. 295) (duties of the bar and judiciary).

Based on these violations, and considering the aggravating and mitigating circumstances discussed below, the panel recommends suspending Respondent from the practice of law for 1 year. The

panel further recommends that he undergo a reinstatement hearing pursuant to Rule 219 (2008 Kan. Ct. R. Annot. 365) before he can be reinstated after the suspension period. Respondent asks to be placed on a proposed probation plan, even though the hearing panel rejected that plan during its proceedings. The Disciplinary Administrator suggested a 3-month suspension to the panel, plus a reinstatement hearing, and repeated that recommendation to this court at oral arguments.

Respondent admits his misconduct. The controversy, Respondent contends, deals with the panel's decision not to keep the record open after his evidentiary hearing to permit him to submit additional medical evidence about his claim that he suffered from depression, the panel's consideration of the aggravating and mitigating circumstances, and the 1-year suspension.

We believe six issues are presented: (1) Did the panel violate Respondent's due process rights by denying his request to submit additional evidence after the hearing; (2) were additional factual findings favorable to Respondent supported by the record; (3) was there sufficient evidence to support the aggravating factors found by the panel; (4) did the panel apply the wrong standards from the American Bar Association; (5) was there sufficient evidence to find Respondent's depression and reputation in the community were mitigating factors; and (6) what is the appropriate discipline?

*Appellate Standard of Review*

In disciplinary proceedings, this court "considers the evidence, the findings of the disciplinary panel, and the arguments of the parties and determines whether violations of KRPC exist and, if they do, what discipline should be imposed. [Citation omitted.]" *In re Lober*, 276 Kan. 633, 636, 78 P.3d 442 (2003). Any attorney misconduct must be established by clear and convincing evidence. 276 Kan. at 636. Clear and convincing evidence is evidence causing the factfinder to believe the truth of the facts asserted is "highly probable." *In re B.D.-Y.*, 286 Kan. 686, 697, 187 P.3d 594 (2008). In attorney discipline cases, the hearing panel is the finder of fact. If the Respondent does not take exception to a finding, it is deemed

admitted. Supreme Court Rule 212(c) (2008 Kan. Ct. R. Annot. 327).

*Application of Standard to Facts*

To apply the standard to these proceedings, we need to outline the violations found by the panel from four separate complaints: (1) A client complaint from B.H.; (2) a complaint from Judge Anthony Powell; (3) a client complaint from D.V.; and (4) a client complaint from F.S.

## DA9586 — Complaint by B.H.

Regarding the complaint by B.H., the hearing panel found the following facts by clear and convincing evidence. In November 2004, B.H. hired Respondent to represent him in a civil case. Respondent filed a 10-day request for clerk's extension of time to file an answer, but he never filed an answer or other responsive pleading within the time extended by the clerk. In late December 2004, B.H. called Respondent for an update on the case. Respondent told B.H. he was still working on it and would let B.H. know as developments occurred. On January 6, 2005, default judgment was entered against B.H. Respondent testified he was not notified or aware of the default judgment. B.H. said he did not receive any notice of the judgment.

In March 2005, B.H. attempted to obtain a loan and was told he was not eligible for a lower interest rate because of the outstanding civil suit. B.H. called Respondent to again inquire about the litigation's status and was told by Respondent that he would take care of it. But Respondent continued to take no action to further B.H.'s representation. In April 2005, B.H. again sought an update from Respondent and was told again Respondent would take care of it. Respondent also said he thought the opposing counsel was going to abandon the case.

On May 31, 2005, B.H.'s wages were garnished. B.H. retained new counsel when he was unable to reach Respondent. B.H.'s new attorney obtained representation for B.H. through a home insurance policy, and the garnishment and default judgment were set aside.

## DA10162 — Complaint by Judge Anthony Powell

Regarding the complaint by Judge Anthony Powell, the hearing panel found the following facts by clear and convincing evidence. For the 2006-2007 attorney registration period, Respondent failed to pay the annual attorney registration, comply with the continuing legal education (CLE) requirements, pay the CLE fee, and pay the CLE noncompliance fee. As a result, on October 11, 2006, this court suspended Respondent's license to practice law. Despite the suspension, Respondent continued to actively practice law.

On March 12, 2007, while still under suspension, Respondent appeared in Sedgwick County District Court before the Honorable Anthony Powell on a post-divorce matter. During the hearing, the other party questioned whether Respondent was authorized to appear in court because of the suspension. Judge Powell confronted Respondent about this while on the record during the proceedings. Respondent told Judge Powell he had a petition for reinstatement pending and "it's covered." This statement was false. When asked directly whether he was able to appear in court, Respondent answered, "Yes." Judge Powell then relied on Respondent's false statements in determining Respondent was able to continue with the proceeding.

After appearing before Judge Powell, Respondent took the necessary steps to have his license to practice law reinstated. Thereafter, on April 1, 2007, this court reinstated Respondent to the practice of law.

On May 7, 2007, Respondent hand-delivered a letter to Judge Powell. The letter provided as follows:

"I am writing to you on the case listed above. My law license was suspended from October 11, 2006 through April 1, 2007. My license is now in good status. I had representation on the case listed above in your Court during the time period of my suspension for failing to pay fees and obtain CLE hours. I am sending a similar letter to my client advising him of my suspended status during this time period. I had previously told Mr. Moss that I would not represent him in this modification sought by Ms. Harrison, but because he was out of state I would get him time to make an appropriate response. I did not previously tell him my privilege was not in good standing.

"I want to apologize to you for appearing in front of you when my privilege to practice was not valid. When you inquired regarding my status, I gave a vague

and misleading response, or more accurately non-response. This was entirely improper. I understand that I have a duty to the Court as well as to my clients to make proper representation of my status to practice law, and I have failed to be candid with the Court regarding my status. Please understand that I meant no disrespect to the Court in making this appearance; it was purely my inability to deal with the situation in which I found myself. Again, I apologize to you. A copy of this letter is being sent by me to the Disciplinary Administrator in Topeka."

## DA10228 — Complaint by D.V.

Regarding the complaint by D.V., the hearing panel found the following facts by clear and convincing evidence. On October 13, 2006, which was 2 days after Respondent was suspended from the practice of law, D.V. hired Respondent to get her driver's license reinstated. D.V. was referred by Kansas Legal Services (KLS), and she paid $308 for the representation of which $280 was received by Respondent and $28 was paid to KLS.

After D.V. retained Respondent, he was dilatory in seeking to restore her driver's license. From the time Respondent was retained to May 2007, D.V. called Respondent approximately 30 times and left messages for him to call her. Respondent returned only five telephone calls, during which Respondent said he intended to resolve the problem with her driver's license. But Respondent failed to take any action toward completing his representation, except to make a few preliminary contacts. The panel concluded Respondent did not take "reasonable steps" to get D.V.'s driver's license reinstated.

## DA10238 — Complaint by F.S.

Regarding the complaint by F.S., the hearing panel found the following facts by clear and convincing evidence. In November 2006, while Respondent was under suspension by this court, F.R. retained Respondent to represent his son, F.S., in a traffic matter. F.R. was referred to Respondent by KLS, and he paid $308 for the representation of which $280 was received by Respondent and $28 was paid to KLS.

After being retained by F.R., Respondent failed to return F.R.'s phone calls or take any action on behalf of F.S. On March 13, 2007, F.R. sought assistance from the Wichita Bar Association's Fee Dis-

pute Committee to get a refund of the unearned fees. The hearing panel noted that as of the date of its report, Respondent had not refunded the $308 paid by F.R. Parenthetically, we observe that at the time of oral argument before this court, Respondent acknowledged he still had not refunded this money.

On June 1, 2007, F.R. filed a complaint with the Disciplinary Administrator's office regarding Respondent. On June 27, 2007, the Disciplinary Administrator wrote Respondent and directed him to provide a written reply to the complaint. Respondent failed to provide a written response. This failure made it necessary for a special investigator with the Disciplinary Administrator to contact Respondent by telephone and in writing directing him to cooperate with the disciplinary investigation. Respondent failed to respond to the letter, the telephone calls, or otherwise cooperate in the investigation.

## The Panel's Recommended Sanction

Based upon the above-stated factual findings, the hearing panel determined Respondent violated KRPC 1.1, KRPC 1.3, KRPC 1.4, KRPC 1.15, KRPC 3.3, KRPC 5.5, KRPC 8.1, KRPC 8.4, and Kansas Supreme Court Rule 207. The panel found the Disciplinary Administrator failed to establish by clear and convincing evidence that Respondent violated KRPC 3.2 (2008 Kan. Ct. R. Annot. 525) (expediting litigation). In addition, the panel declined to find Respondent violated Supreme Court Rule 208 (2008 Kan. Ct. R. Annot. 307) (attorney registration), as it would be duplicitous to the finding he violated KRPC 5.5 (2008 Kan. Ct. R. Annot. 565).

From those determinations, the panel recommended a 1-year suspension, based on the following discussion and analysis:

"In making this recommendation for discipline, the Hearing Panel considered the factors outlined by the American Bar Association in its Standards for Imposing Lawyer Sanctions (hereinafter 'Standards'). Pursuant to Standard 3, the factors to be considered are the duty violated, the lawyer's mental state, the potential or actual injury caused by the lawyer's misconduct, and the existence of aggravating or mitigating factors.

"*Duty Violated.* The Respondent violated his duty to his clients to provide competent and diligent representation. Additionally, the Respondent violated his duty to his clients to provide reasonable communication. Further, the Respondent

violated his duty to the public and to the profession to maintain his personal integrity and comply with orders of the court.

"*Mental State*. The Respondent knowingly violated his duties.

"*Injury*. As a result of the Respondent's misconduct, the Respondent caused actual injury to his clients and to the legal profession.

"*Aggravating or Mitigating Factors*. Aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed. In reaching its recommendation for discipline, the Hearing Panel, in this case, found the following aggravating factors present:

"Dishonest or Selfish Motive. The Respondent's misconduct before Judge Powell was motivated by dishonesty. Providing false responses to questions posed by a District Court Judge is serious misconduct.

"A Pattern of Misconduct. Included in this case are four complaints. Three complaints involve similar misconduct. Accordingly, the Respondent engaged in a pattern of misconduct.

"Multiple Offenses. The Respondent violated KRPC 1.1, KRPC 1.3, KRPC 1.4, KRPC 1.15, KRPC 3.3, KRPC 5.5, KRPC 8.1, KRPC 8.4, and Kan. Sup. Ct. R. 207. As such, the Respondent committed multiple offenses.

"Vulnerability of Victim. [D.V.] and [F.S.] were referred to the Respondent through Kansas Legal Services. Kansas Legal Services is a statewide non-profit organization, dedicated to helping low income Kansans. As such, [D.V.] and [F.S.] were vulnerable to the Respondent's misconduct.

"Substantial Experience in the Practice of Law. The Kansas Supreme Court admitted the Respondent to practice law in 1986. At the time the Respondent engaged in misconduct, the Respondent had been practicing law for more than 18 years. Accordingly, the Hearing Panel concludes that the Respondent had substantial experience in the practice of law at the time he engaged in the misconduct.

"Indifference to Making Restitution. To date, the Respondent has made no effort to make restitution to [D.V.] and [F.R.] for the unearned legal fees.

"Mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed. In reaching its recommendation for discipline, the Hearing Panel, in this case, found the following mitigating circumstances present:

"Absence of a Prior Disciplinary Record. The Respondent has not previously been disciplined.

"Personal or Emotional Problems if Such Misfortunes have Contributed to a Violation of the Kansas Rules of Professional Conduct. During the hearing on the Formal Complaint, the Respondent testified that he has suffered from depression for some time. According to the Respondent, his depressed state contributed to the misconduct. No evidence was offered to corroborate the Respondent's testimony.

"The Present and Past Attitude of the Attorney as Shown by the Respondent's Cooperation During the Hearing and the Respondent's Acknowledgment of the

Transgressions. The Respondent fully cooperated in the disciplinary process as exhibited by his complete acknowledgment of the misconduct.

"Remorse. At the hearing on the Formal Complaint, the Respondent expressed genuine remorse.

"In addition to the above-cited factors, the Hearing Panel has thoroughly examined and considered the following Standards:

'Suspension is generally appropriate when:

(a) a lawyer knowingly fails to perform services for a client and causes injury or potential injury to a client; or

(b) a lawyer engages in a pattern of neglect and causes injury or potential injury to a client.' Standard 4.42.

'Suspension is generally appropriate when a lawyer knows that false statements or documents are being submitted to the court or that material information is improperly being withheld, and takes no remedial action, and causes injury or potential injury to a party to the legal proceeding, or causes an adverse or potentially adverse effect on the legal proceeding.' Standard 6.12.

'Suspension is appropriate when a lawyer knowingly violates a court order or rule, and there is injury or potential injury to a client or a party, or interference or potential interference with a legal proceeding.' Standard 6.22.

'Suspension is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed to the profession, and causes injury or potential injury to a client, the public, or the legal system.' Standard 7.2."

## *Analysis*

*(1) Did the hearing panel violate Respondent's right to due process by denying his request to submit additional evidence after the hearing?*

Respondent argues fundamental fairness requires a rehearing because, after the hearing, the panel did not allow Respondent to submit written information from his physician and counselor about his claim that he suffers from depression. Respondent contends this information was relevant, as a mitigating factor, to establish that his depression contributed to the violations and how continued treatment would alleviate the depression. As noted above, the final hearing report reflected that "[n]o evidence was offered to corroborate the Respondent's testimony [regarding his depressed state]."

As background for this argument, we note Respondent testified personally at his hearing that he suffered from depression and offered his opinion that this depression was a factor in his misconduct. He did not call his doctor or counselor as a witness, and he

did not submit any documentation about his illness. When asked why he did not call these witnesses, Respondent told the panel:

"I should have . . . but I didn't choose to--[sic] I did not subpoena them and have them come. . . . [M]y opinion was I guess that the letters from folks, the ongoing issues and difficulties . . . and quite frankly my own admissions . . . would be sufficient to . . . establish that."

A member of the panel then asked if he would be willing to submit letters from his doctor to the panel, and Respondent agreed. The panel member indicated he would be interested in that information. But after the parties rested, the panel informed Respondent it had not formally requested he submit letters regarding his depression. Respondent asked the panel to allow it in the following statement:

"I would like to ask for the opportunity to present [the letters]. I haven't done as good a job as I need to in presenting my case to you. I would ask that you keep the record open so that I would be able to present that . . . ."

The panel reiterated it would consider his request during deliberation, but it had not agreed to keep the record open for additional evidence. There is no evidence Respondent attempted to submit any documentation to the panel after the hearing, even though nearly 90 days passed between the time the hearing concluded and the date of the panel's written report. Respondent made no effort to follow up on this submission during this time and explains that he was confused as to whether it would have been proper to do so.

Respondent argues now that fundamental fairness requires allowing him to submit these letters because a panel member asked for them before Respondent concluded his testimony. He argues he was not informed the letters would not be allowed until after he rested his case. Respondent believes a new panel should be constituted to receive this evidence, rehear the other evidence previously presented, and then consider anew what recommendations to make to this court.

An attorney has a property interest in his or her license, and it cannot be deprived without due process of law. *In re Brown*, 258 Kan. 731, 734, 907 P.2d 132 (1995). The fundamental due process requirement is "the opportunity to be heard at a meaningful time

and in a meaningful manner." *In re J.D.C.*, 284 Kan. 155, 166, 159 P.3d 974 (2007).

Respondent appears to argue he was not heard in a meaningful manner because he was not allowed to submit additional evidence that he was not prepared to present at the original hearing. But Respondent had the opportunity to submit letters from his doctor and counselor or to call these witnesses to testify at the hearing, and he knew this well in advance of the hearing date. The Notice of Hearing, dated March 13, 2008, specifically advised: "Respondent is entitled to be represented by counsel, to cross-examine witnesses, and to present evidence." In addition, Rule 211 (2008 Kan. Ct. R. Annot. 313) informs parties to these proceedings how formal hearings are to be conducted and makes it obvious that this is the opportunity to put on evidence.

Yet despite this notice, Respondent came to the hearing unprepared to corroborate his own testimony. He knew, or certainly should have known, that it would be necessary for him to place into evidence supporting evidence about his medical diagnosis, his treatment, and his prognosis. He obviously made the choice to offer this medical evidence through his own testimony, rather than to corroborate his testimony with qualified medical evidence.

It cannot be reasonably argued now that Respondent was denied fundamental fairness when it was his own decision that led to this evidence not being available for presentation to the panel at the hearing. Having failed to follow the procedures available to him, his due process rights were not violated.

*(2) Did the hearing panel fail to make adequate findings of fact?*

Next, Respondent argues the panel should have made additional factual findings. He contends these facts would affect the panel's determinations concerning the aggravating and mitigating factors involved in this case when imposing discipline. But he does not argue there was insufficient evidence to support the panel's findings. Instead, he contends the panel failed to give enough weight to the evidence he believes is helpful to him. Specifically, Respondent argues the panel did not give appropriate emphasis to facts in the record that would demonstrate: (1) how he cooperated with

the new attorney hired to defend the default judgment; (2) his hand delivery of a personal apology to Judge Powell; (3) his not appearing again in court after appearing in Judge Powell's court; (4) his returning some of the calls from clients and calls on behalf of clients; and (5) his speaking to the Disciplinary Administrator's investigator about the F.S. case, even though he did not submit a written response as required.

But these facts were not material, and most were required of Respondent anyway. For example, Respondent cannot claim that ceasing his unauthorized practice of law after appearing before Judge Powell is a mitigating circumstance. He was bound by our rules not to practice law immediately after he was suspended for failing to comply with applicable CLE requirements. Similarly, he was obligated to cooperate with the Disciplinary Administrator's office. Supreme Court Rule 207(b) (2008 Kan. Ct. R. Annot. 295). We find it reasonable not to give Respondent credit as a mitigating factor for simply doing what we expect from licensed attorneys, who already have agreed to follow the Kansas Rules of Professional Conduct in order to practice their profession.

But even if we were inclined to consider these additional facts as evidence as to whether Respondent attempted to rectify the consequences of his misconduct under Standard 9.32(d) (timely good faith effort to make restitution or to rectify consequences of misconduct), that would be countered by the panel's finding that Respondent was indifferent about making restitution to D.V. and F.S. This failure would legitimately overwhelm other mitigating factors and support the panel's recommendation. *In re Walsh*, 286 Kan. 235, 248, 182 P3d 1218 (2008) ("[T]he panel must consider the evidence presented with respect to aggravating and mitigating circumstances and determine how much weight to assign to each in arriving at an appropriate discipline.").

As pointed out by the Disciplinary Administrator in his brief, it is obvious from reviewing the panel's hearing report that it was aware of the facts that Respondent believes mitigate his misconduct. The hearing panel simply did not give those factors as much weight as Respondent believes the panel should have given them. This court should not reweigh the evidence. 286 Kan. at 248.

(3) *Was there insufficient evidence to support the aggravating factors found by the panel?*

Next, Respondent contends there was insufficient evidence for the hearing panel to consider the following aggravating factors: dishonest or selfish motive; vulnerability of the victims; and indifference to making restitution. For the reasons discussed here, we find there was ample evidence presented to support the panel's determinations regarding these aggravating factors and that Respondent's arguments lack merit.

The hearing panel found Respondent's conduct before Judge Powell was motivated by dishonesty. Respondent attempts to split hairs by conceding that his behavior was dishonest, but claiming his motive was not. In his brief, Respondent argues he appeared in court even though he was suspended from the practice of law to prevent the opposing party from "abus[ing] the Court system on an out-of-state party." But Respondent testified at his disciplinary hearing that another reason for appearing was because he was struggling financially. This alone was sufficient to justify the conclusion that his motive was selfish and his intent was to misrepresent to the court that he was licensed and able to appear in court. This fully supports the panel's finding that Respondent's misconduct was motivated by dishonesty.

The hearing panel also found D.V. and F.S., the clients referred to Respondent by KLS, were vulnerable because "[KLS] is a statewide non-profit organization, dedicated to helping low income Kansans." Respondent contends it was inappropriate for the panel to make a blanket finding that all clients qualifying for KLS's reduced fee program are vulnerable. The Disciplinary Administrator argues individuals must have low income before qualifying for the program, and they are vulnerable because they do not have the ability to readily hire new counsel. This court previously has recognized a client's financial condition can make the client particularly vulnerable to an attorney's misconduct. *In re Potter*, 279 Kan. 937, 945, 112 P.3d 216 (2005) (clients were vulnerable because they were filing for bankruptcy).

Both D.V. and F.S. sought legal assistance from KLS, and they both qualified for the reduced fee program offered by this non-

profit agency. Both clients paid $308 for Respondent's represen-
tation. Under the circumstances, the hearing panel was justified to
find these clients were vulnerable. The panel did not err in finding
the victims' vulnerability was an aggravating circumstance.

The panel also found Respondent's indifference to making res-
titution to D.V. and F.S. for the unearned legal fees was an aggra-
vating factor. The panel based its finding of indifference on Re-
spondent's failure to make restitution by the time of the hearing.
As mentioned above, by the time Respondent appeared before this
court to argue against the panel's findings, Respondent said he still
had not repaid his victims.

Respondent provided no evidence to the hearing panel dem-
onstrating he was incapable of reimbursing his clients. Respondent
testified he was working as a pro tem judge during the time leading
up to the discipline hearing, and we add that he represented to
this court at oral argument that he was still working as a pro tem
small claims court judge in Sedgwick County. The hearing before
the panel occurred in May 2008, and he received the payments
from D.V. and F.S. in October and November 2006, respectively.

As the Disciplinary Administrator argues, it is difficult to believe
Respondent could not reimburse these clients for any of the money
he owes them. We would add that it also is difficult to believe
Respondent would appear before this court to argue against the
panel's finding of indifference in making restitution to his victims,
when he still had not made that restitution by the time of oral
argument. We conclude that the panel's finding of indifference as
an aggravating circumstance was supported by ample evidence.

(4) *Did the panel apply the wrong American Bar Association (ABA)
Standards?*

Respondent next argues the hearing panel employed the wrong
ABA Standards for Imposing Lawyer Sanctions (Standards) when
determining what sanction to impose. He contends the panel
should have considered Standard 4.43, which states reprimand is
appropriate when the attorney's misconduct involves lack of due
diligence, but that the hearing panel cited to Standard 4.42 instead.

This argument fails because the panel is not required to cite or follow any ABA Standards.

The ABA Standards are guidelines that may be used to assist a panel when deciding what discipline to impose. A hearing panel is not required to cite, discuss, or employ these standards. *In re Ware*, 279 Kan. 884, 892, 112 P.3d 155 (2005). As this court previously stated:

"Neither this Court nor the hearing panel are required to cite and discuss every potentially applicable standard. Moreover, discussion of any standard is not required. The Standards are guidelines to assist courts in selecting appropriate and uniform discipline, depending upon the facts and the aggravating and mitigating factors of each case." *In re Keithley*, 252 Kan. 1053, 1057, 850 P.2d 227 (1993).

Both Standards 4.42 and 4.43 were discussed at the hearing. The panel chose to cite Standard 4.42 pertaining to suspension, which was consistent with their recommendation. Standard 4.43 discusses when probation is appropriate, and it states: "Reprimand is generally appropriate when a lawyer is negligent and does not act with reasonable diligence in representing a client, and causes injury or potential injury to a client." Here, it is obvious the hearing panel found Respondent's misconduct was more than mere negligence. Its reference to Standard 4.42 was appropriate based on the clear and convincing evidence found by the panel.

(5) *Was there sufficient evidence to find Respondent's depression and community reputation were mitigating factors?*

Respondent next argues the evidence supported the panel finding two additional mitigating factors. The first is his claim that he suffered from depression, which caused his misconduct and can be treated. The second is his claim that he has good character and enjoys a good reputation in the community. The Disciplinary Administrator argues the panel considered Respondent's testimony on these matters and was justified in determining neither was sufficient to warrant consideration as a mitigating factor.

As to the first matter, Respondent contends his depression and financial difficulties were emotional and personal problems contributing to his violation of the Rules and should have been found as mitigating factors. The hearing panel addressed these matters

in its final report. It acknowledged Respondent's testimony that he suffered from depression, and it acknowledged his opinion that the depression contributed to his misconduct. But the panel did not believe this testimony was sufficient to establish a mitigating factor because Respondent offered no evidence to corroborate his assertions, as we discussed above.

Under Standard 9.32(i), a finding that a mental disability qualifies as a mitigating factor requires showing four factors: (1) There is medical evidence the Respondent is affected by a mental disability; (2) the mental disability caused the misconduct; (3) Respondent's recovery from the mental disability is demonstrated by a meaningful and sustained period of successful rehabilitation; and (4) the recovery arrested the misconduct and recurrence of that misconduct is unlikely. ABA Standard 9.32(i)(1)-(4).

Respondent failed to make a showing as to any of these elements. He had ample notice and opportunity to submit evidence about his condition, but came to the hearing unprepared to do so. The panel did not err in deciding not to consider this as a mitigating factor.

As to character and reputation, Respondent contends the hearing panel should have found his previous good character and reputation in the community were mitigating factors. He claims he established this through two letters. The first letter was from Thomas Lasater, a local attorney familiar with Respondent. Lasater wrote he knew Respondent for many years, and he thought "[w]hen [Respondent] is on his game, he is truly a credit to his profession." Lasater also stated that "[w]ith proper medical care and professional monitoring, I believe [Respondent] will be able to comply with all of his duties and obligations as a practicing lawyer."

The second letter was from David Hiebert, another local attorney. The letter was addressed to the Disciplinary Administrator indicating Hiebert would supervise Respondent's practice if the panel agreed to probation. This letter contained no information on Respondent's character. It merely stated that Hiebert was "familiar with [Respondent's] depression issues."

Hearing panels in other discipline cases have relied upon reference letters to determine whether the Respondent possessed a good character and reputation in the community. But these cases required a significant showing to establish this factor. See *In re Ellis,* 288 Kan. 604, 204 P.3d 1161, 1164 (2009) (good character and reputation was "evidenced by a number of letters"); *In re Campbell,* 287 Kan. 757, 761, 199 P.3d 776 (2009) (good character and reputation was evidenced by "several letters"). Other hearing panels have also relied upon the testimony of reputation witnesses or the combination of both character witnesses and letters to establish this factor. See *In re Lee,* 287 Kan. 676, 682, 198 P.3d 140 (2008) (good character and reputation was established through testimony of character witnesses); *In re Lazzo,* 283 Kan. 167, 171, 150 P.3d 887 (2007) (good character and reputation was established by testimony of witnesses and several letters).

Respondent submitted one letter, and he failed to subpoena any character witnesses. The panel did not err in failing to find this factor in his favor. See *In re Walsh,* 286 Kan. at 248.

*(6) Should Respondent receive probation instead of suspension?*

Finally, Respondent attacks the hearing panel's recommendation of a 1-year suspension and claims he is entitled to probation based on a proposed probation plan he submitted to the panel at the day of its evidentiary hearing. The panel rejected the proposed plan for two reasons.

First, the panel found Respondent failed to comply with Kansas Supreme Court Rule 211(g) (2008 Kan. Ct. R. Annot. 313) because he did not implement the plan before the hearing and because his proposed plan was not substantial, detailed, and workable. The panel noted Respondent did not even locate a probation supervisor until 2 days before the hearing on the formal complaint. Just as importantly, the panel also found probation would not correct all of Respondent's misconduct and would not serve the interests of the legal profession or the state because Respondent engaged in dishonest conduct.

We note the panel's recommendation for discipline is advisory only, and it does not constrain this court from imposing a greater

or lesser penalty. *In re Dennis*, 286 Kan. 708, 737, 188 P.3d 1 (2008); Rule 212(f) (2008 Kan. Ct. R. Annot. 327). In this matter, we accept the hearing panel's recommendation.

Respondent failed to meet the procedural and substantive requirements for submitting a plan under Rule 211(g)(1). These requirements must be satisfied before the hearing panel can recommend probation. Respondent failed to do this.

In addition, the panel found Respondent's dishonest conduct could not be corrected by probation, and it was not in the interests of the profession or the citizens of Kansas to recommend probation. Rule 211(g)(3)(iii) bars the hearing panel from recommending probation if the panel finds the misconduct cannot be corrected by probation.

The panel's conclusion is further supported by the ABA Standards. Under ABA Standards 4.42 and 6.22, suspension is appropriate when an attorney: (1) displays a pattern of neglect, causing injury or the potential for injury; (2) knowingly fails to perform services, causing injury or the potential for injury; and (3) knowingly violates a court order or rule. Respondent's misconduct toward his clients clearly falls within the first two instances. He did not file an answer, return phone calls, or perform any work on his client's behalf. Respondent's decision to appear in Judge Powell's court while his license was suspended violates the third instance.

IT IS THEREFORE ORDERED that the Respondent, Steven K. Woodring, be and he is hereby disciplined by suspension from the practice of law in Kansas for a period of 1 year effective upon the filing of this opinion, in accordance with Supreme Court Rule 203(a)(2) (2008 Kan. Ct. R. Annot. 266), for violations of KRPC 1.1 (2008 Kan. Ct. R. Annot. 400) (competence); KRPC 1.3 (2008 Kan. Ct. R. Annot. 415) (diligence); KRPC 1.4 (2008 Kan. Ct. R. Annot. 432) (communication); KRPC 1.15 (2008 Kan. Ct. R. Annot. 493) (safekeeping property); KRPC 3.3 (2008 Kan. Ct. R. Annot. 531) (candor toward the tribunal); KRPC 5.5 (2008 Kan. Ct. R. Annot. 565) (unauthorized practice of law); KRPC 8.1 (2008 Kan. Ct. R. Annot. 579) (bar admission and disciplinary matters); and KRPC 8.4 (2008 Kan. Ct. R. Annot. 586) (misconduct).

IT IS FURTHER ORDERED that the Respondent make restitution to D.V. and F.S. in the amount of $308 each.

IT IS FURTHER ORDERED that the Respondent undergo a re-instatement hearing pursuant to Kansas Supreme Court Rule 219 (2008 Kan. Ct. R. Annot. 365) before he may be reinstated.

IT IS FURTHER ORDERED that the Respondent comply with Supreme Court Rule 218 (2008 Kan. Ct. R. Annot. 350).

IT IS FURTHER ORDERED that the costs of this action be assessed to the Respondent and that this order be published in the official Kansas Reports.